Filed:  June 3, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

―――――――――

No. 95-4019
(CA-93-2269-3-21BD)

―――――――――

John D. Arnold,

                              Petitioner - Appellant,

        versus

Parker Evatt, etc., et al,

                              Respondents - Appellees.

―――――――――

O R D E R

―――――――――

        The Court amends its opinion filed May 14, 1997, as follows:

        On page 10 -- The sentence at the top of page 10 is a continuation of the paragraph on page 9, not a new paragraph.

        On page 16, footnotes 62, 63 and 64 are corrected to read, respectively, "494 U.S. 433 (1990)," "486 U.S. 367 (1988)," and 66 F.3d at 1364."

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                    ―――――――――――――――――――――
                              Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN D. ARNOLD,
Petitioner-Appellant,

v.

PARKER EVATT, Commissioner,

South Carolina Department of
Corrections; T. TRAVIS MEDLOCK,
Attorney General, State of South
Carolina,
Respondents-Appellees.

No. 95-4019

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
William B. Traxler, Jr., District Judge.
(CA-93-2269-3-21BD)

Argued: September 25, 1996

Decided: May 14, 1997

Before RUSSELL, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Russell wrote the opinion, in
which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Edmund Heyward Robinson, Cambridge, Massachusetts;
Michael Patrick O'Connell, Assistant Federal Public Defender,
Charleston, South Carolina, for Appellant. Lauri J. Soles, Assistant

Attorney General, Columbia, South Carolina, for Appellees. **ON BRIEF:** Charles Molony Condon, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellees.

_____

**OPINION**

RUSSELL, Circuit Judge:

In the early morning hours of April 12, 1978, cousins John Arnold and John Plath, who were in their early twenties, along with their respective eleven-year-old and seventeen-year-old girlfriends, Carol Ullman and Cindy Sheets, borrowed a friend's car and went looking for wild mushrooms. During their search they encountered farm worker Betty Gardner as she walked along the side of the road. Gardner hitchhiked a ride with the two couples, who took her to her brother's home. Gardner then asked if the group would take her to work, but they refused and drove off. However, testimony indicated Arnold suggested they go back and kill Gardner because he "didn't like niggers." They then went back, picked Gardner up, and took her to a remote wooded area near a garbage dump.

When Gardner attempted to leave, Arnold told her that she was not going anywhere, kicked her in the side, and knocked her down. Gardner was alternately sexually assaulted, urinated on, stomped, beaten with a belt, hit with a jagged bottle, stabbed with a knife, and choked with a garden hose. All four persons at one time or another participated in physically assaulting Gardner. Testimony also indicated Arnold dragged Gardner into the woods to complete her murder, which he did by strangling her with the garden hose, getting leverage by putting his foot on her neck. Arnold then carved "KKK" into Gardner's body in an attempt to mislead law enforcement. As it turned out, Gardner's body was not found until Sheets' involvement came to light and she provided law enforcement with the location of Gardner's decomposed remains.

Arnold and Plath were indicted in the Beaufort County Court of General Sessions on charges of murder and kidnapping. After a jury

2

trial, they were convicted on February 6, 1979. Both defendants were sentenced to death by electrocution.

Arnold appealed to the South Carolina Supreme Court which affirmed his conviction, but remanded the case for resentencing because of improper prosecutorial argument.[1] At the resentencing trial, the new jury found Arnold guilty of committing the murder while in the commission of kidnapping and recommended the death penalty. In January 1984, the South Carolina Supreme Court affirmed Arnold's death sentence.[2] The United States Supreme Court subsequently denied Arnold's petition for writ of certiorari, with two Justices dissenting based on Arnold's Sixth Amendment claim regarding the jury view of the crime scene.[3] Arnold filed an application for post-conviction relief in the Beaufort County Court of Common Pleas in November, 1984. An evidentiary hearing resulted in an order denying his application. Arnold then filed a petition for writ of certiorari to the South Carolina Supreme Court, which the court denied.

In 1988, however, the United States Supreme Court granted a writ of certiorari and remanded the case to the Beaufort County Court of Common Pleas for reconsideration on the issue of the trial court's implied malice instruction.[4] On remand, the court denied the application for post-conviction relief, holding that the malice instruction did not include an impermissible presumption, or alternatively, any error was harmless. Arnold made a number of subsequent motions to amend his application which, following another hearing in 1990, the court denied as meritless or untimely. Arnold appealed the denial of post-conviction relief to the South Carolina Supreme Court. The court concluded that under United States Supreme Court precedent the implied malice instruction was harmless error.[5] The United States Supreme Court denied another petition for writ of certiorari in 1993.[6]

---

**1** State v. Plath, 284 S.E.2d 221 (S.C. 1981).

**2** State v. Plath, 313 S.E.2d 619 (S.C. 1984).

**3** Arnold v. South Carolina, 467 U.S. 1265 (S.C. 1984).

**4** Arnold v. South Carolina, 484 U.S. 1022 (1988).

**5** Arnold v. State, 420 S.E.2d 834 (S.C. 1992).

**6** Arnold v. South Carolina, 507 U.S. 927 (1993).

On August 31, 1993, Arnold presented a petition for writ of habeas corpus by a person in state custody in the United States District Court for the District of South Carolina. The United States Magistrate Judge, after hearing oral arguments on the petition and all intervening motions, recommended the district court deny the petition. After objections, the United States District Judge entered an order, filed September 29, 1995, adopting the findings of the magistrate and granting the State's motion for summary judgment. Arnold appeals.

I.

The trial court's implied malice instruction, which caused the United States Supreme Court to remand this case eight years ago, continues to be the subject of appeal. At the guilt phase of Arnold's trial, the trial court instructed the jury that murder is "the killing of any person with malice aforethought either expressed or implied." The trial court explained that malice may be expressed "as where one makes previous threats of vengeance or where one lies in wait or other circumstances which show directly that the intent to kill was really entertained," or may be implied from the willful, deliberate and intentional doing of any unlawful act without just cause or excuse, or from the use of a deadly weapon. Based on United States Supreme Court precedent, the South Carolina Supreme Court determined that the implied malice portion of the court's instruction denied Arnold his due process right by erroneously shifting the burden of proof as to malice from the prosecution to the defendant.[7] We agree and now examine whether the error was harmless.

In Yates v. Evatt, the Supreme Court held that an implied malice instruction substantially similar to the one given by Arnold's trial court was constitutional error subject to harmless-error analysis.[8] The harmlessness standard for habeas review of constitutional error is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."[9] Therefore, Arnold must establish

_____

[7] Arnold, 420 S.E.2d at 838.

[8] 500 U.S. 391, 400-02 (1991), disapproved in part on other grounds, Estelle v. McGuire, 502 U.S. 62, 72-3 n.4 (1991).

[9] Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

4

"actual prejudice" as a result of the implied malice instruction in order to obtain habeas relief.**10** The reviewing court, according to Yates, need not find that the jury was totally unaware of the erroneous presumption. Instead, it must only determine the error was unimportant in relation to the other evidence considered by the jury independently of the erroneous presumption.**11** In making such a determination, the reviewing court must: (1) ask what evidence the jury actually considered in reaching its verdict; and (2) weigh the probative force of that evidence as against the probative force of the erroneous presumption standing alone.**12**

Rather than "conduct a subjective enquiry into the jurors' minds" to discover what evidence the jury considered, the reviewing court should analyze the instructions given to the jurors and apply the customary presumption that the jurors followed the instructions in making their decision.**13** Throughout the jury charge on malice at Arnold's trial, the trial court reminded the jurors to base their determination of malice on all the evidence presented, that any malice presumption was rebuttable, and that malice must be established beyond a reasonable doubt. The defendants presented some evidence tending to rebut malice, including Plath's testimony that he and Arnold did not participate in the murder. Thus, as in Yates, the jury was "free to look beyond the unlawful presumption and consider all the evidence on malice."**14**

Having determined that the jury considered the entire record, the next question is whether the evidence was so overwhelming that the jury would have found malice beyond a reasonable doubt absent the

_____

**10** Id. Although Yates applied the harmlessness standard found in Chapman v. California, 386 U.S. 18, 24 (1967) (test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"), we believe that Yates' method of analysis is a valid one for determining whether actual prejudice was caused by a jury instruction that unconstitutionally shifted a burden of proof from the prosecution to the defendant.

**11** Yates, 500 U.S. at 403.

**12** Id. at 404.

**13** Id.

**14** Id. at 408.

5

erroneous presumptions.**15** The South Carolina Supreme Court cited fourteen pieces of evidence tending to show express malice on the part of Arnold.**16** Arnold argues that this evidence supports the predicate facts of the erroneous presumptions, decreasing the probative force of the evidence, and that the solicitor made references to the implied malice instructions in his closing arguments, increasing the probative force of the erroneous presumptions standing alone. Arnold fails, however, to tip the scales sufficiently in his favor. Put simply, this case reeks of express malice and any reasonable jury, notwithstanding the implied malice instruction, would have found malice beyond a reasonable doubt. We hold that the implied malice instruction was harmless error.

## II.

Arnold claims the solicitors' closing arguments at his guilt and resentencing trials were improper and prejudicial.

### A.

Arnold initially raised the issue of the solicitor's guilt-phase comments in his Third Amended Application for Post-Conviction Relief, which the state court dismissed as untimely. As a general matter, federal habeas corpus review is unavailable where a prisoner has defaulted his federal claim in state court pursuant to a state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."**17** Arnold presents no evidence of cause and prejudice and is unable to allege a fundamental miscarriage of justice. Instead, Arnold argues that South Carolina's practice of in favorem vitae review, wherein the state appellate court searches the record for error without regard to whether an objection has preserved it, allows us to disregard the state court default. This court rejected an argument identical to Arnold's in Kornaherns v. Evatt, holding that

_____

**15** Id. at 405.

**16** Arnold, 420 S.E.2d at 840.

**17** Coleman v. Thompson, 501 U.S. 722, 750 (1991).

6

"unless the prisoner raises the specific objections before the state court, we cannot determine whether the state court has properly applied federal constitutional principles, or for that matter, whether the state court has even considered these issues at all."[18] Accordingly, Arnold's due process claim concerning the solicitor's guilt-phase comments is procedurally barred.

In addition, Arnold alleges that his counsel's failure to object to the solicitors' guilt-phase comments violated his Sixth Amendment right to effective representation. Arnold must demonstrate both that his counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's actions, the results of the proceedings would have been different.[19] This claim has been thoroughly reviewed and found meritless by both the state court at the post-conviction relief hearing and the United States district court. We agree that Arnold fails to establish either deficient performance or prejudice.

B.

Turning to the resentencing-phase comments, Arnold contends that the solicitors subverted the jury's role as an independent fact finder by interjecting their personal opinions regarding the evidence, the credibility of witnesses, and the jury's ultimate decision. According to Arnold, improper references were made to the grounds for the reversal of Arnold's first death penalty sentence, Arnold's failure to testify, and a polygraph examination taken by a witness. In addition, the solicitors allegedly appealed to passion and prejudice by urging the jury to have the "guts" to sentence Arnold to death, speculating about the possibility of Arnold escaping from jail if given a life sentence, commenting on the amount of tax money that had been spent on the trial, and asking the jury to put itself in the place of the victim.

Misconduct by a prosecutor in closing argument may be grounds for reversing a conviction.[20] As noted by the Supreme Court in

_____

[18] 66 F.3d 1350, 1362 (4th Cir. 1995), cert. denied, 116 S.Ct. 1575 (1996).

[19] Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

[20] Berger v. United States, 295 U.S. 78, 89 (1934).

7

Darden v. Wainwright, however, the fact that comments were "undesirable or even universally condemned" is not sufficient.[21] The test is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[22] In determining whether a prosecutor's comments denied the defendant fundamental fairness, the reviewing court should consider: (1) the nature of the comments, (2) the nature and quantum of the evidence before the jury, (3) the arguments of opposing counsel, (4) the judge's charge, and (5) whether the errors were isolated or repeated.[23]

As discussed at length in Arnold's brief, this is not the first time the closing arguments of the lead solicitor at the resentencing trial have come under appellate scrutiny. Indeed, Arnold's original death sentence was vacated by the South Carolina Supreme Court in part because the lead solicitor told the jury he would never ask for the death penalty in Beaufort again if the jury did not return with a recommendation that the death penalty be imposed.[24] Apparently having learned nothing from this rebuke, many of the remarks made by the lead solicitor and his assistant solicitor at the resentencing trial were needlessly inflammatory. In order to determine whether fundamental fairness was implicated, however, the solicitors' comments must be viewed in the context of the entire proceedings.[25]

An examination of the record offers little support for Arnold's claim. Overwhelming evidence established the statutory aggravating circumstance of kidnapping necessary for the jury to impose a death sentence. The judge instructed the jurors that they must assess the credibility and believability of the witnesses who testified and they were not to be governed by sympathy, prejudice, passion or public opinion in coming to a final decision. In addition, the remarks objected to by Arnold were relatively isolated in the context of the solicitors' lengthy closing arguments. In light of these facts, we find

_____

[21] 477 U.S. 168, 181 (1986).

[22] Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

[23] Lawson v. Dixon, 3 F.3d 743, 755 (4th Cir. 1993) (citing Darden, 477 U.S. at 182, and Donnelly, 416 U.S. at 647).

[24] **Plath**, 284 S.E.2d at 230.

[25] United States v. Young, 470 U.S. 1, 11 (1985).

8

the solicitors' comments did not so infect the resentencing trial with unfairness as to make the resulting sentence a denial of due process.

III.

Arnold claims that the jury's viewing of the crime scene during the resentencing trial violated his Sixth Amendment rights on two distinct grounds. First, Arnold contends he was denied his Sixth Amendment right to counsel because his trial attorneys were excluded from attending the jury view. Second, Arnold asserts he was denied his Sixth Amendment right to the effective assistance of counsel because his trial attorneys failed to adequately object to their exclusion. The absence of counsel from a jury view is a virtually nonexistent issue in the history of federal jurisprudence presumably because trial judges, mindful of the Sixth Amendment, normally permit defense counsel to attend.[26]

Gardner's murder took place in a wooded area near a garbage dump on an island off the coast of South Carolina. As part of the resentencing trial, the solicitor moved that the jury be taken to view the crime scene. Defense counsel opposed the motion, noting that "the scene had changed too much." The solicitor responded that the location where the crime was committed had not changed, and that the scene was relevant "particularly as to the kidnapping feature of [the State's case], [because] it goes to show that they were at the most God-forsaken place that there is in the world, I believe, to take this woman out." The trial judge decided to permit the jury view, but prohibited both the solicitor and defense counsel from attending. An attorney representing John Plath expressed concern that the officers who took the jury to the scene might make prejudicial statements. The trial judge responded that he would "make the provision that they would not say anything." The trial judge, the solicitor, and defense counsel eventually agreed to certain details of how the view would be conducted, including that the trial judge would accompany the jurors.

_____

[26] But see, United States v. Walls, 443 F.2d 1220, 1223 n.3 (6th Cir. 1971) (relying on supervisory authority over district court to find that judge's visit to crime scene in the absence of defendant or counsel was reversible error).

9

The jury view took place the following day, but there is no record or transcript of the proceeding.

In examining this issue, both the district court and the South Carolina Supreme Court relied on Snyder v. Massachusetts, a 1934 opinion from the United States Supreme Court holding that a jury view does not constitute part of a trial for purposes of a defendant's right to be present.**27** Regarding a bare inspection of the site, Justice Cardozo wrote: "There is nothing [a defendant] could do if he were there, and almost nothing he could gain."**28** Under South Carolina state law a jury view is not regarded as evidence or the taking of testimony.**29** Accordingly, the previous reviewing courts concluded that the absence of defense counsel at the jury view could not have prejudiced Arnold, and therefore did not implicate any constitutional rights.

This line of reasoning rests on a flawed interpretation of Supreme Court Sixth Amendment jurisprudence. Snyder is not a holding about the right of defense counsel to be present at a jury view. In fact, it can be inferred that the presence of defense counsel at the jury view was one of the reasons why the exclusion of the defendant did not amount to a constitutional violation.**30** In addition, over the past forty years the Court has determined that a right to counsel exists during any "critical stage" of a defendant's criminal proceeding.**31** For example, the Court has expressly held that a right to counsel exists during a pretrial identification procedure,**32** a preliminary hearing,**33** a pretrial psychiatric examination,**34** sentencing,**35** and an appeal.**36** In general, "the accused

---

**27** 291 U.S. 97 (1934).

**28** Id. at 108.

**29** Plath, 313 S.E.2d at 625 (citing State v. Suber, 71 S.E. 466 (S.C. 1911)).

**30** Snyder, 291 U.S. at 103-04.

**31** Coleman v. Alabama, 399 U.S. 1, 7 (1970). This expansion was especially significant following the Supreme Court's recognition of a constitutional right to counsel in state criminal proceedings in Gideon v. Wainwright, 372 U.S. 335 (1963) nearly thirty years after Snyder.

**32** United States v. Wade, 388 U.S. 218 (1967).

**33** White v. Maryland, 373 U.S. 59 (1963).

**34** Estelle v. Smith, 451 U.S. 454 (1981).

**35** Mempha v. Rhay, 389 U.S. 128 (1967).

**36** <u>Douglas v. California</u>, 372 U.S. 353 (1963).

10

is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial."[37] The appropriate question is whether "potential substantial prejudice to defendant's rights inheres in the particular" event where counsel was absent.[38]

A jury view presents the danger of potential substantial prejudice to a defendant. The jury could be influenced by the words or actions of officers showing the scene, by the way in which the scene is exhibited, or by the condition of the scene at the time of the view. Depriving defense counsel of access to all of the information received by the jury might diminish the effectiveness of his advocacy. Given the inapposite holding of Snyder and more recent Supreme Court precedent, we assume for the purpose of argument that the absence of Arnold's counsel at the jury view amounted to constitutional error under the Sixth Amendment.[39]

Arnold is entitled to a fair, but not a perfect, trial. In examining the effect of constitutional errors on criminal convictions, the Supreme Court has established a distinction between structural errors, which require automatic reversal, and all other errors, which are subject to harmless-error analysis.[40] Therefore, we must determine the proper classification of Arnold's alleged Sixth Amendment violation. Most constitutional errors can be harmless and judges should be wary of prescribing new structural errors unless they are certain that the error's presence would render every trial in which it occurred unfair.[41]

The Supreme Court has "long since rejected the argument that, as

---

[37] Wade, 388 U.S. at 226.

[38] Id. at 227.

[39] At oral argument, the State contended that a finding of constitutional error would be a "new rule" under Teague v. Lane, 489 U.S. 288 (1989), thus barring consideration of the underlying claim. We decline to expressly determine the question of constitutional error, finding that the claim fails even assuming the presence of error.

[40] Arizona v. Fulminate, 499 U.S. 279, 306-07 (1991).

[41] Id. at 306-10.

a general matter, the Sixth Amendment prohibits the application of harmless-error analysis in determining whether constitutional error had a prejudicial impact on the outcome of a case."[42] For example, in Satterwhite v. Texas, the Court held that the erroneous admission of psychiatric evidence, which had been obtained in violation of the defendant's right to consult with counsel prior to submitting to an examination, was subject to harmless-error analysis.[43] Only in cases where "the deprivation of the right to counsel affected -- and contaminated -- the entire criminal proceeding" is reversal automatic.[44]

In a recent decision, Sherman v. Smith, this court held that an unsupervised visit to a crime scene undertaken by a juror in a criminal trial was subject to harmless-error analysis.[45] We concluded that "juror site visits can be discrete moments in the course of an otherwise fair trial" and "it cannot be said with any certainty that a juror site visit renders every trial in which it occurs unfair."[46] If an unsupervised juror site visit is subject to harmless-error analysis, then a supervised jury view in the absence of defense counsel must be subject to no greater scrutiny. The reviewing court should "look to the nature and extent of the [jury's] activity and assess how that activity fit into the context of the evidence presented at trial."[47] The level of conjecture inherent in this inquiry is reduced, making it even more appropriate for harmless-error analysis, when the jury view is personally supervised by the judge.

_____

[42] Sullivan v. Louisiana, 508 U.S. 275, 282-83 (1993) (Rehnquist, C.J., concurring).

[43] 486 U.S. 249, 258 (1988).

[44] Id. at 257 (citing Holloway v. Arkansas, 435 U.S. 475 (1978) (conflict of interest in representation throughout entire proceeding); Gideon v. Wainwright, 372 U.S. 335 (1963) (total deprivation of counsel throughout entire proceeding); White v. Maryland, 373 U.S. 59 (1963) (absence of counsel from arraignment hearing that affected entire trial because defenses not asserted were irretrievably lost); Hamilton v. Alabama, 368 U.S. 52 (1961) (same)).

[45] 89 F.3d 1134, 1137 (4th Cir. 1996) (en banc), cert. denied, 117 S.Ct. 765 (1997).

[46] Id. at 1138.

[47] Id. at 1139.

12

The harmlessness standard on habeas review of constitutional error is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."**48** Kidnapping, under South Carolina law, is "the forceful seizure, confinement or carrying away of another against his will without authority of law."**49** The remoteness of the crime scene was therefore an important factor in establishing the aggravating circumstance of kidnaping in Arnold's case. The absence of his counsel at the jury view, Arnold argues, was prejudicial because they were then unable to challenge the solicitors' characterization of the site as a "God-forsaken place."

No amount of trial advocacy, however, would have convinced the jury that a wooded area near a garbage dump on an island was anything but a remote location. The jury view allowed the jurors to visually confirm this impression and was cumulative of other evidence admitted at trial about the crime scene.**50** The presence of the trial judge, and his instruction that the jury view be conducted in silence, also mitigated any possible prejudice to Arnold. In addition, the State offered other substantial evidence from which the jury could conclude that kidnaping was an aggravating circumstance.**51**

Jury views should be conducted in the presence of defense counsel.**52** All of the elements of a perfect trial, however, are not required in order to have a fair trial. After reviewing the circumstances surrounding the jury view and all of the evidence presented by the State at Arnold's sentencing retrial, we harbor no "grave doubt as to [the] harmlessness" of any potential constitutional error stemming from the absence of Arnold's defense counsel.**53**

The district court and the South Carolina Supreme Court found that

_____

**48** Brecht, 507 U.S. at 637 (quoting Kotteakos, 328 U.S. at 776).

**49** State v. Smith, 268 S.E.2d 276, 277 (S.C. 1980).

**50** See Sherman, 89 F.3d at 1142.

**51** See id. at 1143.

**52** See generally Clemente v. Carnicon-Puerto Rico Management Assoc., 52 F.3d 383, 386 (1st Cir. 1995) (suggesting "fundamental safeguards" that should be part of jury view).

**53** O'Neal v. McAninch, 115 S.Ct. 992, 995 (1995).

13

Arnold's trial attorneys failed to object to their absence from the jury view. To prove ineffective assistance of counsel, however, Arnold must demonstrate both that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's actions, the results of the proceedings would have been different.**54** Even assuming there was an unreasonable failure to object, Arnold's claim cannot succeed. This court has held that the prejudice question addressed as part of an ineffective assistance of counsel claim is essentially the same inquiry as made in a harmless-error analysis.**55** Having found the absence of counsel at the jury view to be harmless error, we cannot fault counsel's failure to object.**56**

IV.

The State argues that the limitations on our scope of review created by § 104 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibit our granting relief on two of Arnold's claims.**57** The AEDPA was signed into law after the filing of Arnold's habeas petition, but § 104 does not have an effective-date provision. Although the majority of this panel would be inclined to apply the new limitation on our scope of review to all pending habeas petitions, we note that the issue of retroactivity is currently before both the Supreme Court and the Fourth Circuit.**58** We decline, therefore, to step

_____

**54** Strickland, 466 U.S. at 688, 694.

**55** Smith v. Dixon, 14 F.3d 956, 974 (4th Cir. 1994) (en banc) ("[F]or all of the same reasons fully set forth . . . [in the part of the opinion] addressing harmless error, [the defendant] is unable to show actual prejudice as a result of his attorney's failure to raise the heinousness claim on direct appeal").

**56** Anderson v. Warden, Maryland Penitentiary, 670 F.2d 1339, 1342, n.10 (4th Cir. 1982).

**57** Pub.L. No. 104-132, 110 Stat. 1214 (April 24, 1996). Section 104 amends 28 U.S.C. § 2254, the statute which governs the issuance of writs of habeas corpus for persons in state custody. Although the new § 2254(d) may affect additional claims raised by Arnold, the state has not asked us to consider its possible bearing on any other claims, and we consider the issue waived. See Emerson v. Gramley, 91 F.3d 898, 900 (7th Cir. 1996), cert. denied, 117 S.Ct. 1260 (1997).

**58** Lindh v. Murphy, 96 F.3d 856, 865 (7th Cir. 1996) (en banc), cert. granted in part, 117 S.Ct. 726 (1997); Howard v. Evatt, No. 95-4017

14

onto shifting ground. Because the AEDPA does not affect our determination concerning the following claims, we will apply the preexisting standards.**59**

A.

Arnold alleges the solicitors' use of his nickname "Mad Dog" during the guilt trial and resentencing trial injected an arbitrary factor into the proceedings in violation of the Eighth and Fourteenth Amendments. The test for an arbitrary factor claim is whether the use of the nickname "so infected the trial with unfairness as to make the resulting conviction a denial of due process."**60** Arnold testified at the post-conviction relief hearing that he was given the nickname because he frequently drank Mogen-David 20/20, a wine colloquially known as "Mad Dog." The solicitors occasionally used the nickname during both trials. Each trial, however, took place before a different jury. Although we do not approve of the solicitors' decision to refer to Arnold as "Mad Dog," upon review of the record we find the use of the nickname did not deny Arnold the due process of law.

B.

Second, Arnold alleges that his counsel's failure to object to the admission of an immunity agreement in which Cindy Sheets, the prosecution's main witness, agreed to take a polygraph test, violated his Sixth Amendment right to effective assistance of counsel. The trial strategy pursued by Arnold's counsel, however, included a decision not to discredit Sheets' testimony because it suggested that John Plath was the leader of the group. Furthermore, no evidence of the results of any polygraph test were presented to the jury and the jury had ample opportunity to assess Sheets' credibility during her lengthy

---

(4th Cir.) (opinion forthcoming based on April 8, 1997 en banc hearing). Cf. Mackall v. Murray, No. 95-4018, slip op. at 6-7 (4th Cir. March 25, 1997) (relevant sections of AEDPA cannot be applied retroactively).

**59** See Matthews v. Evatt, 105 F.3d 907, 922 n.12 (4th Cir. 1996).

**60** Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 643). See Bell v. Evatt, 72 F.3d 421, 436 (4th Cir. 1995) (applying Darden standard to arbitrary factor claim).

15

appearance on the witness stand. Arnold fails to demonstrate either deficient performance or prejudice stemming from the admission of the immunity agreement.**61**

V.

Arnold argues, on three different grounds, that the trial court's instructions to the jury at the resentencing trial were improper, misleading or prejudicial. First, Arnold claims there is a substantial possibility the jury could have thought it must unanimously agree as to the existence of any mitigating circumstance. Second, Arnold contends his due process rights were violated by the trial court's refusal to give a requested instruction regarding the actual effect of a life sentence or a death sentence. Finally, Arnold argues that the failure to give a curative instruction concerning the admission of Cindy Sheets' immunity agreement injected an arbitrary factor into the proceedings. We address each claim in turn and find all of them meritless.

A.

The trial court instructed the jury that its sentence must be unanimous and that it must unanimously find the existence of any aggravating circumstances. Based on the Supreme Court's decisions in McKoy v. North Carolina**62** and Mills v. Maryland,**63** Arnold nowclaims a "substantial possibility" existed that the jury could have thought it must also unanimously agree as to the existence of any mitigating circumstances. Unlike in McKoy or Mills, however, the jury instructions never required the jury to find any mitigating factor unanimously. In Kornaherns, this court addressed the same issue based on a nearly identical set of instructions, and determined that the probability of jury confusion on the issue of unanimity was not substantial.**64**

_____

**61** Strickland, 466 U.S. at 688, 694.

**62** 494 U.S. 433 (1990).

**63** 486 U.S. 367 (1988).

**64** 66 F.3d at 1364.

16

B.

The trial court refused to give Arnold's requested instruction regarding the actual effect of a life sentence or a death sentence. In light of the lead solicitor's speculation as to Arnold's future dangerousness, Arnold claims this refusal violated his due process rights. The Supreme Court determined in Simmons v. South Carolina that when the prosecution puts a defendant's future dangerousness in issue, and the only alternative sentence to death is life imprisonment without parole, due process requires that the jury be informed, either by argument or instruction, that the defendant is parole ineligible.[65] In Arnold's case, however, the record reveals nothing to indicate Arnold would have been parole ineligible. Alternatively, Simmons announced a new constitutional rule that cannot be applied retroactively.[66]

C.

The trial court also refused to give Arnold's requested curative instruction that the jury disregard the mention of a polygraph test in Cindy Sheets' immunity agreement. The trial court held that the charge was a charge on the facts in violation of the South Carolina Constitution. Arnold counters that the admission of the immunity agreement violated state evidentiary rules, thus mandating his requested curative instruction. It is not the province of federal habeas review, however, to reexamine state-court determinations on state-law questions.[67] The only issue before us is whether the state court's decision implicated any constitutional protection. Arnold claims that the failure to give the curative instruction injected an arbitrary factor into the proceedings in violation of the Eighth and Fourteenth Amend-

---

[65] 114 S.Ct. 2187, 2201 (1994) (O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J., concurring in the judgment); Townes v. Murray, 68 F.3d 840, 849-50 (4th Cir. 1995) (holding of the Court in Simmons, because no single rationale explains the result, is the position taken by those members who concurred on the narrowest grounds), cert. denied, 116 S.Ct. 831 (1996).

[66] O'Dell v. Netherland, 95 F.3d 1214, 1238-39 (4th Cir.) (en banc), cert. granted in part, 117 S.Ct. 631 (1996).

[67] Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).

17

ments. The test is whether Arnold was denied fundamental fairness.**68** There is simply no reason to believe, however, that an inference about a polygraph test, concerning a witness who testified at length on direct and cross examination, significantly affected the jury's credibility assessment.

D.

Finally, Arnold argues that the cumulative effect of the trial court's alleged errors in its instructions rendered Arnold's sentence of death unreliable in violation of the Sixth, Eighth and Fourteenth Amendments. Based on the findings of this court concerning the individual claims of error, we reject this claim.

VI.

Just prior to oral argument, Arnold submitted a pro se supplemental brief in which he raised two additional claims. First, Gardner's murder occurred on St. Helena Island in Beaufort County, South Carolina. Arnold now contends that St. Helena Island is not part of the State of South Carolina and the State of South Carolina therefore lacked the jurisdiction to try and convict him of the crime. Second, Arnold argues that his Fifth Amendment right to testify was "chilled" by the actions of his trial attorneys, who threatened to notify the trial court if Arnold committed perjury. Upon review of the record, we find both of these claims meritless.

VII.

For the foregoing reasons, we affirm the judgment of the district court denying the writ of habeas corpus.

AFFIRMED

---

**68** See Bell, 72 F.3d at 436.

18