**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN H. PLATH,
Petitioner-Appellant,

v.

MICHAEL W. MOORE, Director of the
South Carolina Department of

Corrections, in his official capacity;
CHARLES M. CONDON, Attorney
General of South Carolina, in his
official capacity,
Respondents-Appellees.

No. 97-7

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
C. Weston Houck, Chief District Judge.
(CA-93-1857-3)

Argued: September 29, 1997

Decided: November 24, 1997

Before RUSSELL, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Russell wrote the opinion, in
which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** David Paul Voisin, Columbia, South Carolina, for Appel-
lant. Lauri J. Soles, Assistant Attorney General, Columbia, South Car-

olina, for Appellees. **ON BRIEF:** John H. Blume, Columbia, South Carolina, for Appellant. Charles Molony Condon, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellees.

_____

**OPINION**

RUSSELL, Circuit Judge:

Petitioner John Plath ("Plath") appeals the denial of a writ of habeas corpus by the District Court for the District of South Carolina. Because we find that Plath presents no valid grounds for habeas relief, we affirm the district court.

I.

Plath was the co-defendant of John D. Arnold ("Arnold"), against whose habeas appeal this court ruled on May 14, 1997.[1] The South Carolina Court of General Sessions convicted both Plath and Arnold of the 1978 kidnapping, rape, and murder of Betty Gardner, a Beaufort County, South Carolina woman, and sentenced both to death.

The facts of the case against Plath and Arnold are disturbing, and have been summarized several times by both state and federal courts in the last two decades. Most recently, we restated them in Arnold v. Evatt, where we found that:

> In the early morning hours of April 12, 1978, cousins John Arnold and John Plath, who were in their early twenties, along with their respective eleven-year-old and seventeen-year-old girlfriends, Carol Ullman and Cindy Sheets, borrowed a friend's car and went looking for wild mushrooms. During their search they encountered farm worker Betty Gardner as she walked along the side of the road. Gardner hitchhiked a ride with the two couples, who took her to her brother's home. Gardner then asked if the group would take

_____

**1** **Arnold v. Evatt**, 113 F.3d 1352 (4th Cir. 1997).

2

her to work, but they refused and drove off . . . They then went back, picked Gardner up, and took her to a remote wooded area near a garbage dump.[2]

There, Plath, Arnold and their girlfriends subjected Gardner to acts of extreme cruelty and perversion.

According to testimony at trial, shortly after arriving at the wooded area, Arnold knocked Gardner to the ground and he and Plath began kicking her. Plath then ordered Gardner to undress, and forced her to perform oral sex upon himself and Cindy Sheets ("Sheets"). While Gardner performed oral sex upon Sheets, Plath beat Gardner with a leather belt, and subsequently urinated in Gardner's mouth, forcing her to swallow the urine.

Plath and Arnold then together attempted to strangle Gardner with a piece of garden hose they found on the dump site. When this method of execution proved unsatisfactory, Plath repeatedly stomped on Gardner's neck, commenting that "niggers are sure hard to kill." Afterwards, Plath stabbed Gardner some ten times in the chest, and Arnold, using the garden hose, dragged Gardner by the neck into the adjacent woods. Arnold returned to say Gardner did not seem to be dead, and as a result Plath told Sheets to take a broken bottle and cut Gardner's throat.

Sheets and Arnold finally strangled Gardner with the hose, and, in an effort to mislead police, Arnold carved "KKK" into Gardner's body. Nearly six weeks later, however, Sheets led authorities to Gardner's badly decomposed body.

The South Carolina Supreme Court affirmed Plath's and Arnold's convictions, but reversed the death sentences and remanded the case for resentencing.[3] After a resentencing trial before a jury, the Court of General Sessions again imposed the death penalty on both defendants. Plath then appealed to the South Carolina Supreme Court, which affirmed the death sentence,[4] and to the United States Supreme

_____

[2] **Id.** at 1355.
[3] **State v. Plath**, 284 S.E.2d 221 (S.C. 1981).
[4] **State v. Plath**, 313 S.E.2d 619 (S.C. 1984).

3

Court, which denied Certiorari.**5** Plath subsequently applied for Post-Conviction Relief ("PCR") in the South Carolina Court of General Sessions in November 1984, and amended that application twice in 1985. After an evidentiary hearing, the Court of General Sessions dismissed Plath's PCR application on May 12, 1986.

Following that dismissal, Plath again applied for, and was granted, Certiorari to the United States Supreme Court, and that court remanded**6** the case to the Court of General Sessions for reconsideration in light of Yates v. Aiken.**7** The issue meriting reconsideration was whether the implied malice instruction given at Plath's original trial violated his right to due process of law under the 14th Amendment of the U.S. Constitution and, if so, whether that violation constituted reversible error. The Court of General Sessions found that the implied malice instruction did not violate Yates v. Aiken, and that, even if it did, that violation was harmless beyond a reasonable doubt.

Thereafter, Plath submitted a third amended PCR application, which was denied on March 5, 1990. Plath appealed this denial to the South Carolina Supreme Court, which affirmed,**8** holding that, although the implied malice instruction violated Yates v. Aiken, it was harmless beyond a reasonable doubt under the analysis set forth in Yates v. Evatt.**9** On February 22, 1993, the U.S. Supreme Court denied Certiorari.**10**

Plath then sought habeas relief in the United States District Court for the District of South Carolina. On October 8, 1993, the State made a motion for summary judgement, and on October 17, 1994, a U.S. Magistrate issued a report recommending denial of habeas corpus relief. The district court granted the State's motion for summary judgement and denied habeas relief on September 3, 1996, and denied

_____

**5 Plath v. South Carolina**, 467 U.S. 1265 (1984).
**6 Plath v. South Carolina**, 484 U.S. 1022 (1988).

**7** 484 U.S. 211 (1988).
**8 Arnold v. State**, 420 S.E.2d 834 (1992).
**9** 500 U.S. 391 (1991).

**10 Plath v. State**, 507 U.S. 927 (1993).

4

petitioner's motion to alter or amend his order on January 30, 1997. This appeal followed.

II.

Plath alleges six grounds for habeas relief, several of which are the same as those alleged unsucessfully in Arnold . We address each in turn.

A.

As in the case of his co-defendant, Plath first seeks habeas relief on the ground that the trial judge's jury instruction regarding the implication of malice from the use of a deadly weapon was clearly unconstitutional and amounted to reversible error. We considered this same instruction in Arnold, where we found it unconstitutional under Yates v. Evatt,[11] but also found that it was nevertheless harmless error.[12] We see no reason to reach a different conclusion in this case.

In Arnold, we restated the rule that, to obtain habeas relief as a result of an unconstitutional implied malice instruction, a petitioner must show that the instruction "`had substantial and injurious effect or influence in determining the jury's verdict.'"[13] According to Yates v. Evatt, making this determination involves a two-step process: first, we must "ask what evidence the jury actually considered in reaching its verdict."[14] Then, once we have established the extent of the total evidence considered, we must "weigh the probative force of that evidence as against the probative force of the [implied malice] presumption standing alone."[15]

We applied this test in Arnold, where we found that, based on the entire body of evidence considered by the jury,"this case reeks of

_____

[11] **Arnold**, 113 F.3d at 1356.
[12] **Id.** at 1357.
[13] **Id.** at 1356 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).
[14] **Yates v. Evatt**, 500 U.S. 391, 404 (1990).
[15] **Id.**

5

express malice and any reasonable jury, notwithstanding the implied malice instruction, would have found malice beyond a reasonable doubt."[16] Therefore, we found the implied malice instruction in Arnold, the same instruction that is at issue in this case, to be harmless error.

Plath, however, seeks to distinguish this case from Arnold's by asserting that no such clear and independent evidence of malice applied to him. Indeed, Plath argues that all evidence of malice on his part is "confusing and contradictory." We disagree.

As much, if not more, evidence of specific acts of malice in the record pertains to Plath as pertains to Arnold. And as the U.S. Magistrate's report points out, there was testimony at trial of a long list of acts that, when considered by a jury, would have been easily sufficient to support a finding of malice on Plath's part. These acts include: forcing the victim to undress, forcing the victim to perform oral sex upon him, forcing the victim to perform oral sex upon another person, beating the victim with a leather belt while she performed oral sex upon another person, dragging the victim by the neck with a leather belt, urinating in the victim's mouth, helping to strangle the victim with a rubber hose, stabbing the victim, and ordering another person to "finish off" the victim. [17]

Plath also contends that both the lack of credibility of Sheets, a key witness, and the existence of evidence supporting Plath's claim of innocence militate against the notion of a strong body of independent malice evidence. However, both of these elements were present in Arnold, and indeed, Sheets's testimony was as central in that case as it is here. Thus, in this regard, there seems to be little substantive difference between Plath's case and that of Arnold.

Finally, Plath alleges as error the State's use of the implied malice presumption in its closing argument, stating that"[t]he solicitor . . . relied on the presumption of malice arising from the use of a deadly weapon."[18] But here again, the same argument was cited in Arnold,

_____

[16] **Arnold**, 113 F.3d at 1357.
[17] J.A. at 232.
[18] Petitioner's Br. at 11.

6

and in that decision we concluded that it "fails, however, to tip the scales sufficiently in his [Arnold's] favor."**19**

Thus we hold that, as in Arnold, there is suffcient evidence in the record from which a jury could have found beyond a reasonable doubt that Plath acted with malice even in the absence of the unconstitutional instruction. We therefore find that the implied malice instruction was harmless error, and decline to grant habeas relief on this ground.

B.

Plath again borrows an argument from Arnold by alleging that improper arguments by the State at both the guilt and sentencing phases of his trial deprived him of due process of law. Plath concedes that the allegedly improper arguments from the guilt phase of his trial were not raised on direct appeal, but contends that they are appropriate for habeas consideration under Kornahrens v. Evatt.**20** In that case, which we used to dispose of practically the same argument in Arnold, this court reaffirmed a basic principle of habeas corpus jurisprudence, declaring that, "if a state prisoner defaulted on his federal claims in state court pursuant to an independent and adequate state procedural rule, he is precluded from asserting such claims in his federal habeas petition unless he shows cause for and resulting prejudice from default."**21** In addition, such claims must be raised on direct appeal, and cannot be made for the first time during state PCR.**22**

But here, Plath contends that the South Carolina Supreme Court's practice of in favorem vitae review means that the question of improper argument during the guilt phase of the trial was in fact examined at the state level. In Arnold we clearly refuted this notion, but Plath nevertheless attempts to distinguish his claim from that case on two grounds: first, that the May 12, 1986 order of the Court of Common Pleas dismissing Plath's PCR application states that the

_____
**19 Arnold**, 113 F.3d at 1357.
**20** 66 F.3d 1350 (4th Cir. 1995).
**21 Kornahrens v. Evatt**, 66 F.3d 1350, 1357 (4th Cir. 1995).
**22 Id.** at 1362.

7

South Carolina Supreme Court had reviewed the case in favorem vitae, and second, that in the South Carolina Supreme Court there was, at the time of Plath's appeal, "a practice of reviewing closing arguments in capital cases regardless of whether an issued [sic] had been raised at trial or on appeal."**23**

However, both of these grounds seem to miss the thrust of Kornahrens as well as our use of its rule in Arnold. Although in Kornahrens we mentioned that the South Carolina Supreme Court had abolished in favorem vitae review, our reason for declining to recognize such implied review for habeas purposes was not that it did not exist, but that it did not give federal courts a sufficient record to "determine whether the state court has properly applied federal constitutional principles."**24** Quite simply, with only the implication of state court review in favorem vitae, "we have no state court judgement to review."**25**

Thus, there seems to be no reason to distinguish Plath's default from Arnold. Further, with regard to the alleged improper arguments made by the State during Plath's resentencing, an issue that was raised in state court, these same arguments were considered in Arnold, where we found that they did not meet Darden v. Wainwright's requirement that they "`so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"**26** There appears to be nothing in Plath's argument that would demand a different result.

C.

Plath next contends that the Court of General Sessions for Beaufort County lacked jurisdiction over his prosecution, as the site of the crimes in question was neither within the boundaries of Beaufort County nor the State of South Carolina, but was instead part of "The

_____

**23** Petitioner's Br. at 17 (citing State v. Gilbert, 258 S.E.2d 890, 894 (S.C. 1979)).
**24 Kornahrens**, 66 F.3d at 1362.
**25 Id.**; see also Matthews v. Evatt, 105 F.3d 907, 913 (4th Cir. 1997).
**26 Arnold**, 113 F.3d at 1358 (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).

Territorial Sea." This claim was made in Arnold, where we found it "meritless."[27] Unless there has been a change in the geographical position of St. Helena's Island since May 14, 1997, Plath's reiteration of this claim would appear to be equally so.

Further, Plath cites Townsend v. Sain[28] in support of the proposition that he should have at least been allowed an evidentiary hearing on the matter by the district court. However, as the State correctly points out, Townsend demands an evidentiary hearing as a part of a habeas proceeding only where "no express findings of fact" have been made.[29] Here, part of the burden that the State sought to meet was proof of the place of death for jurisdictional purposes, [30] and in the indictment for murder against Plath, the State alleged that Plath killed Gardner "in Beaufort County on or about the 12th day of April 1978."[31]

The fact that the jury convicted Plath based on this indictment is thus as clear and "express" a finding of fact as could be expected. As a result, we hold that the relief contemplated by Townsend is unavailable in this case.

D.

Plath also contends that several acts and omissions of his trial counsel amount to ineffective assistance of counsel, entitling him to habeas relief. First, Plath cites his attorneys' failure to object, at the guilt phase of the trial, to the introduction of and reference to an immunity agreement between the State and Cindy Sheets, the State's primary witness, that alluded to Sheets's submission to a polygraph test. Under Strickland v. Washington,[32] Plath must show that this and any other act by his attorneys was both professionally deficient and the cause of prejudice to him. This, as we have stated, is a difficult

_____

[27] **Id.**
[28] 372 U.S. 293 (1963).
[29] **Townsend v. Sain**, 372 U.S. 293, 314 (1963).
[30] Respondent's Br. at 30 (citing State v. Bostick, 131 S.E.2d 841 (S.C. 1963)).
[31] J.A. at 583.
[32] 466 U.S. 668 (1984).

9

standard to meet, as "`[j]udicial scrutiny of counsel's performance must be highly deferential,'"[33] and prejudice to a defendant must be clear.

In Arnold, we found Arnold's attorneys' failure to object to the same evidence was part of a "trial strategy." [34] In addition, we also found that prejudice was unlikely as, despite the evidence of a polygraph test bolstering Sheets's credibility, "no evidence of the results of any polygraph test were presented to the jury and the jury had ample opportunity to assess Sheets' credibility during her lengthy appearance on the witness stand."[35] Here, although the district court found that the failure to object to this evidence "was not a strategic decision," it nevertheless found in this case the same lack of prejudice that was noted in Arnold, as Sheets testified at length, and "the jury had ample opportunity to observe her for a substantial period of time to reach their own conclusions regarding her credibility."[36] We believe that this conclusion was correct.

Second, Plath contends that his attorneys provided ineffective assistance by failing to lay the proper foundation for x-rays of Plath's leg, broken prior to the murder, which would have helped rebut Cindy Sheets's testimony that Plath "stomped" the victim. However, because authentication of the x-rays would have required bringing in a witness from York, Pennsylvania, and would have exhausted Plath's funds in a vain effort to do so,[37] Plath's attorneys decided instead to use the testimony of a local orthopedic surgeon to establish that Plath's leg was broken at the time of the murder. Plath contends that had the existence of the broken leg been more firmly established, the jury may have found his role in the murder "minimal."

Nevertheless, Plath's argument fails the first prong of the Strickland test: that the acts of counsel be objectively unreasonable.

---

[33] **Kornahrens**, 66 F.3d at 1359 (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).
[34] **Arnold**, 113 F.3d at 1363.
[35] **Id.**
[36] J.A. at 667-68.
[37] **Id.** at 1269.

10

Mere competency and reasonableness are all that is required of counsel under this analysis,**38** and such is clearly present in the strategic decision to use the orthopedic surgeon's testimony in lieu of what appears from the record to have been an impractical alternative. Moreover, Plath, through medical witnesses, was able to establish that his leg had been broken six weeks before the crime. The failure to admit additional x-ray evidence to establish the same fact hardly prejudiced Plath. For these reasons, we hold that the actions of Plath's counsel in this regard were adequate.

Third, Plath claims that his attorneys' failure to present additional mitigating evidence deprived him of his right to effective assistance of counsel. Specifically, Plath claims that, had a more extensive investigation into his background and mental state been made, such mitigating evidence would have influenced a jury to impose a sentence of life imprisonment rather than the death penalty. And indeed, Plath's brief paints a striking picture of Plath's tragic background and extremely unstable mental state.

However, as the State's brief points out, several factors militate against Plath's success on this ground. First, Plath did not raise this issue until his final motion to amend his application for PCR,**39** which means that, absent a showing of cause and prejudice or a fundamental miscarriage of justice, it cannot be considered in this habeas proceeding. Additionally, it appears from the record that, although Plath's counsel did not make an exhaustive examination of his background and mental state, they nevertheless made a reasonable one.**40** At least ten witnesses testified as to Plath's background, and, as the State's brief makes clear, sufficient consideration of Plath's mental state was made.

Further, when considered against the sheer magnitude of the aggravating evidence against Plath, it is difficult to see the allegedly unreasonable omission of this mitigating evidence as prejudicial. As in Strickland, "[g]iven the overwhelming aggravating factors, there is no

---

**38** **See Kornahrens**, 66 F.3d at 1361.

**39** J.A. at 2373.
**40** **See Matthews**, 105 F.3d 907, 919-20 (4th Cir. 1997).

11

reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances and, hence, the sentence imposed."[41] Thus, in weighing the omitted evidence against that actually used to convict and sentence Plath, the mitigating evidence seems insufficient to shift the balance in Plath's favor.

And finally, Plath claims that the failure of his counsel to call Elizabeth Binder as a witness at his sentencing retrial denied him effective assistance of counsel. But again, Plath did not raise this claim during his appeals at the state level, and thus the State is correct in asserting, as did the district court, that it is procedurally barred. In addition, because there were some questions as to Binder's credibility, the decision not to call her as a witness had clear strategic value, and thus can withstand the Strickland test.

E.

Plath next contends that a lack of mental competence on his part during the resentencing trial violated his rights under the Due Process Clause of the Fourteenth Amendment. Again, Plath did not raise this issue until his final motion to amend his PCR application, where it was dismissed as untimely, thus the presumption is that it is procedurally barred. Nevertheless, Plath attempts to rebut this presumption by citing a line of South Carolina Supreme Court cases that have allowed the issue of competence to be raised during collateral (PCR) proceedings.

However, Plath seems to miss the crucial distinction between a state court allowing the unraised issue to be included in a PCR application, and a federal court considering it as part of a habeas proceeding. As we wrote in Kornahrens, "the crux of federal habeas corpus review is to provide criminal defendants with a mechanism to review state court interpretations of federal constitutional protections, while providing deference to the role of state court proceedings."[42] Therefore, cases, like those cited by Plath, where a state court has allowed

_____

[41] Strickland, 466 U.S. at 700.

[42] Kornahrens, 66 F.3d at 1362.

12

an unraised issue to become a part of state PCR review, do not mean that the principles of comity that limit habeas review can be ignored.

In addition, Plath argues that these departures mean that the procedural default rule in question is inconsistently applied and is thus not an adequate and independent state ground for the default. We disagree. In Meadows v. Legursky, this court considered similar allegations of inconsistent application of a state procedural rule and found that, despite some deviations, a "general rule," that had been applied "`in the vast majority of cases,'" was entitled to respect as an adequate and independent state ground.**43** In this case, it is unclear whether the departures from the state default rule that Plath cites similarly constitute merely deviations from the "general rule" applied in the "vast majority of cases." However, the district court, after a thorough analysis, concluded that even if Plath did preserve the argument, he had failed to meet the requirements of Lawson v. Dixon, 3 F.3d 743 (1993), and so was not entitled to an evidentiary hearing on mental competency, and we agree.

F.

Finally, Plath claims that the absence of his counsel from a jury view of the site of the crimes in question deprived him of effective assistance of counsel. This same issue was raised in Arnold, where, although we conceded that a view should be conducted in the presence of counsel, we stated that "[a]ll of the elements of a perfect trial . . . are not required in order to have a fair trial."**44** Thus, we found that error harmless. As Plath alleges the same exclusion of counsel in this case, we believe that the result should be the same here, and decline to grant relief on this ground.

CONCLUSION

For the foregoing reasons, we affirm the judgement of the district court denying the writ of habeas corpus.

AFFIRMED
_____

**43** 904 F.2d 903, 907 (4th Cir. 1990) (en banc) (citing Dugger v. Adams, 489 U.S. 401 (1989)).

**44 Arnold**, 113 F.3d at 1361.

13