UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4151

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DANIEL BANKS,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (5:05-cr-0030-FPS)

Submitted:  December 6, 2006      Decided:  January 11, 2007

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

L. Richard Walker, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Rita R. Valdrini, Acting United States Attorney, David J. Perri, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case arises out of an ongoing feud between rival groups in Wheeling, West Virginia. As a result of a May 2005 shooting incident, defendant Daniel Banks was convicted of one count of "Felon in Possession of a Firearm" in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and sentenced to 92 months. We affirm the defendant's conviction and sentence.

## I.

On May 28, 2005, James Harris, Lorenzo Clark, and Chris Waitts were talking in an East Wheeling alley. A man whom Harris immediately recognized as the defendant, Daniel Banks, appeared at the corner adjoining an intersecting alley. He yelled obscenities and pointed a gun in their direction. Clark ran one way and Harris and Waitts scaled a nearby chainlink fence. They heard shots behind them.

Toni Reynolds, a software consultant who lives in an East Wheeling apartment overlooking the intersecting alley, testified that she heard the gunshots, looked out the window, and saw two men sprinting down the street. She described the men as black males, wearing white shirts, and light colored pants. One man was wearing a black jacket and the second man was carrying a black jacket. As Reynolds watched, one of the men turned up the alley located behind the Scottish Rite Temple. He reappeared a few seconds later.

2

A second witness, Ernest Stewart, was parked beside the Scottish Rite Temple when he heard pistol shots. He called 911. While he was on the phone, a man in a white tank top and light pants ran around the corner of the alley. He was trying to wrap up a pistol in what appeared to be a black sweatshirt. The man pointed the gun at Stewart, turned, and ran back down the alley. Later that day, Stewart identified Banks at the Wheeling Police Department.

Wheeling police officers found two pistols -- a nine millimeter Smith & Wesson and a .45 caliber pistol -- hidden in a nearby vacant lot behind a gymnasium. The pistols were wrapped up in a black jacket. Defendant and a cohort were arrested nearby. Their clothing matched the description provided by the witnesses. They were sweating, agitated, and jacketless. A ballistics examination revealed that the nine millimeter Smith & Wesson pistol recovered from the vacant lot had fired the three shell casings found at the shooting scene. Swabs taken of the defendant's right hand revealed gun shot residue.

During pre-trial proceedings, the prosecution requested and the court granted a jury view, which gives jurors an opportunity to view the scene of a crime. According to the United States, a view would aid the juror's understanding of East Wheeling, an unfamiliar area that was not readily susceptible to verbal description. The United States Marshals Service voiced security concerns over

3

allowing the defendant -- judged a flight risk by the magistrate judge -- to return to his home turf unrestrained. The court nevertheless allowed Banks to participate in the view. The court determined that the defendant could follow along with the jury view, unseen by the jurors, in an unmarked van. The court also invited defense counsel to ride in the bus with the jurors, but counsel elected instead to accompany the defendant.

At trial, Banks was convicted on one count of "Felon in Possession of a Firearm" in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and sentenced to 92 months. Defendant now appeals his conviction and sentence arguing that the district court erred (1) by excluding him from the jury view; (2) by admitting into evidence the .45 caliber pistol; and (3) by imposing an unreasonable sentence.

II.

The defendant first argues that he was "effectively deprived of the 'indicia of innocence'" because he was not permitted to attend the jury view unshackled. He thus chose to follow the jury bus on its tour of East Wheeling in an unmarked van. He contends this caused the jury to conclude from his absence that he was in custody and a "bad man."

This argument misses the mark. To begin with, there is no absolute constitutional right for a criminal defendant to be

4

present during a jury view of a crime scene. Snyder v. Massachusetts, 291 U.S. 97, 107-08 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964); Arnold v. Evatt, 113 F.3d 1352, 1359 (4th Cir. 1997); Devin v. DeTella, 101 F.3d 1206, 1209 (7th Cir. 1996). In this case, the trial judge made every effort to accommodate the defendant's desire to participate in the view and his desire to avoid being seen in shackles by the jury. Accordingly, because the exclusion of the defendant from the jury view would not necessarily amount to a constitutional violation, see Snyder, 291 U.S. at 110, his participation in the view by means of an unmarked van certainly does not, see Arnold, 113 F.3d at 1359-60.

Finally, any error in the way that a jury view is conducted is subject to harmless error review. Id. at 1361. Here, the trial court mitigated any possibility of prejudice to the defendant. To begin with, the trial judge himself conducted the view. See id. The view itself was nonprejudicial; the judge simply pointed out, without comment, four previously determined sites. See Snyder, 291 U.S. at 110. Finally, defense counsel was given the opportunity to participate in the view, to walk through each portion of the view with the jurors, and to point out other sites that the defendant wished identified.

III.

Defendant next argues that the district court erred by admitting into evidence the .45 caliber pistol, claiming that the admission was both irrelevant and unduly prejudicial. We disagree. The .45 caliber pistol was relevant under Federal Rule of Evidence 401 because it tended to corroborate the testimony of eyewitnesses and because the pistol helped furnish the context for and complete the story of the crime. See FED. R. EVID. 401; see also United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994); United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980).

At trial, Officer Gittings testified that he found two guns -- the disputed .45 caliber pistol and the 9 millimeter Smith & Wesson -- wrapped inside a black jacket and hidden in a shallow hole along the defendant's escape route. The fact that the .45 caliber pistol was found alongside the 9 millimeter Smith & Wesson tended to corroborate the testimony of eyewitnesses Toni Reynolds, Ernest Stewart, and James Harris. It was also relevant to and probative of the defendant's possession of the 9 millimeter firearm specified in the indictment. Finally, it was within the court's sound discretion to admit the .45 caliber pistol since the pistol was, quite literally, wrapped up in evidence which provided context for and helped to complete the story of the crime.

Nor can the defendant show a danger of unfair prejudice under Federal Rule of Evidence 403. See FED. R. EVID. 403. Officer

6

Gittings' testimony regarding the discovery of the .45 caliber pistol had already been admitted -- without objection. The court also agreed to give a cautionary instruction to the jury, explaining that the .45 caliber pistol was not the weapon the defendant was charged with possessing in the indictment. The defendant, moreover, argued all along that he was simply in the wrong place at the wrong time and categorically denied any knowledge of or involvement in the alleged shooting. The district court plainly did not abuse its discretion in concluding that the probative value of the pistol itself outweighed any possibility of unfair prejudice to the defendant.

IV.

Finally, defendant contends that the court's sentence is "unreasonable" because the court failed to depart on the basis of Banks' "history and characteristics," namely, poverty, a challenging childhood, and lack of parental guidance. See 18 U.S.C. § 3553(a)(1) (2000). We note at the outset that the district court imposed the minimum sentence within the properly calculated advisory guidelines range, 92 months. The court, moreover, took into consideration the factors listed in 18 U.S.C. § 3553(a). The record is clear that the court considered defendant's "history and characteristics," paying special attention to Banks' evidence regarding his disadvantaged background. Indeed,

7

the court stated that this history influenced Banks' sentence within the guidelines range, but that the defendant's personal history -- which was similar to that of many other defendants -- did not justify a sentence below the advisory guidelines. While finding Banks' background unfortunate, the court wrote that it did not excuse Banks' criminal conduct or "wipe away the other crimes that the defendant has committed."

Defendant also argues that his sentence was based on the judge's "personal beliefs about Banks' father" rather than the evidence adduced at the sentencing hearing. The district judge did not, however, rely on personal observations, but rather on the evidence proffered by the defense. The court wrote that because the defendant's evidence of his family situation was not "measurably different from defendants similarly situated" the evidence could not "lead [the court] to vary or depart downward on the sentencing range." Moreover, the court's stray remarks regarding the defendant's father, however misguided, cannot be said to have improperly influenced sentencing here because those comments are in general accord with defendant's own submissions.[*]

_____

[*]The district court noted that, based on its understanding, Banks' father never set anyone on "a wrongful path." Defense testimony was not to the contrary. Defense counsel referenced "reports" that Banks' father was physically abusive, but continued stating that Banks' father "seemed to have the children's interest in mind. And I think he wanted to, through being a strict disciplinarian, keep the children studying in school, being good people, being good neighbors and in the main, your Honor, I think he was successful in that." According to defendant, trouble

8

Taking the sentencing proceeding as a whole, it is clear that the defendant did not receive a variance or downward departure from the advisory guidelines range because of defendant's extensive criminal history and the egregious nature of his offense -- not because of any personal views the court may have formed independently as to the defendant's background. Indeed, the district court's consideration of the defendant's background worked in his favor. See 18 U.S.C. 3553(a)(1). "Because the record does not demonstrate that the judge's personally held ... beliefs formed 'the basis of [the] sentencing decision,' we conclude that [the defendant's] due process rights were not violated by the judge's ... reference at sentencing." Arnett v. Jackson, 393 F.3d 681, 687-88 (6th Cir. 2005) (quoting United States v. Bakker, 925 F.2d 728, 741 (4th Cir. 1991)) (internal alteration modified).

V.

For the foregoing reasons, we affirm Banks' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

---

started when his mother and father separated, leaving defendant without a father figure.