**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TYRONE DELANO GILLIAM,
Petitioner-Appellant,

v.

STUART O. SIMMS, Secretary,
Department of Public Safety and

Correctional Services,
Respondent-Appellee.

No. 97-14

WESLEY EUGENE BAKER; KENNETH
LLOYD COLLINS; JOHN MARVIN
BOOTH; STEVEN H. OKEN,
Amici Curiae.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-94-1422-MJG)

Argued: October 29, 1997

Decided: January 13, 1998

Before MURNAGHAN, NIEMEYER, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Judge Murnaghan and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Jerome Howard Nickerson, Jr., Bel Air, Maryland, for
Appellant. Gwynn X. Kinsey, Jr., Assistant Attorney General, Crimi-

nal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellee. **ON BRIEF:** Billy H. Nolas, Philadelphia, Pennsylvania, for Appellant. J. Joseph Curran, Jr., Attorney General of Maryland, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellee. Gary W. Christopher, Assistant Federal Public Defender, Baltimore, Maryland; Peter E. Keith, GALLAGHER, EVELIUS & JONES, Baltimore, Maryland; Nevett Steele, Jr., Michael J. Gentile, Towson, Maryland; William B. Purpura, Baltimore, Maryland; Fred Warren Bennett, CATHOLIC UNIVERSITY LAW SCHOOL, Washington, D.C.; Charles G. Bernstein, Baltimore, Maryland; Neil Ian Jacobs, Rockville, Maryland, for Amici Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

NIEMEYER, Circuit Judge:

A Maryland state trial court convicted Tyrone Gilliam of the first-degree murder of Christine Doerfler and sentenced him to death. After exhausting his direct state appeals and unsuccessfully seeking a writ of certiorari from the United States Supreme Court, Gilliam filed several habeas petitions in state court, all of which were denied. He then filed a petition for a writ of habeas corpus in federal court which the district court denied. On appeal, Gilliam argues that the district court erred (1) in denying his petition without granting him a hearing, and (2) in denying his claims for ineffective assistance of counsel during a pretrial hearing on his motion to suppress his confession, during the sentencing phase of his trial, and during direct appeal. For the following reasons, we affirm.

I

During the evening of December 2, 1988, Tyrone Gilliam, Kelvin Drummond, and his brother, Tony Drummond, car-jacked Christine

2

Doerfler as she was getting out of her car in a parking lot near her sister's home. They forced Doerfler to drive around to find a Signet Bank at which they could force her to use her Signet Bank card. When they arrived at the end of Gum Spring Road in Baltimore County, they stopped their cars and began talking while Gilliam guarded Doerfler, aiming a sawed-off shotgun at her head. Kelvin Drummond later testified that as he lit up a cigarette that his brother Tony had given him -- the Drummond brothers were standing by their own car -- he heard a loud bang and saw Doerfler slumped over the steering wheel of her car. When Kelvin asked Gilliam why he shot Doerfler, Gilliam answered "because she saw [my] face." The three had stolen three dollars from Doerfler and, at the time, had been using alcohol and drugs, including PCP.

A few days later, in the early morning hours of December 5, Gilliam and the Drummond brothers were involved in an armed robbery of a mini-mart. They left the mini-mart in two cars, and, a short time later, police tried to stop them. After a high-speed chase, the police apprehended Gilliam when his car crashed into a median embankment. Because Gilliam was bleeding from the head, the police took him to the emergency room for treatment. In the car, they found Gilliam's sawed-off shotgun with three shells in it. Shortly after six o'clock in the morning, after Gilliam had received emergency treatment and had been visited by his mother, he was released from the emergency room to the custody of police and placed in a holding cell. Later in the afternoon, at almost 5:00 p.m., police questioned Gilliam. After being confronted with a statement from Kelvin Drummond that identified Gilliam as Doerfler's shooter, Gilliam confessed, making oral and tape-recorded confessions.

After electing a bench trial, Gilliam was tried in the Circuit Court for Baltimore County before Judge Fader, who convicted him of first-degree murder, robbery with a dangerous weapon, use of a handgun in the commission of a felony, and kidnapping. In finding Gilliam guilty of first-degree murder, Judge Fader relied on both premeditated and felony murder grounds. During the sentencing phase, Judge Fader found two aggravating factors and no mitigating factors and sentenced Gilliam to death on the murder charge. The Court of Appeals of Maryland affirmed, Gilliam v. State ("Gilliam I"), 320 Md. 637

3

(1990), and the Supreme Court denied Gilliam's petition for a writ of certiorari, Gilliam v. Maryland, 498 U.S. 1110 (1991).

With different counsel, retained by the Public Defender's Office, Gilliam filed a post-conviction challenge in the Maryland trial court, alleging the ineffective assistance of counsel. Following a four-day evidentiary hearing, the court denied post-conviction relief. The Court of Appeals of Maryland affirmed, Gilliam v. State ("Gilliam II"), 331 Md. 651 (1993), and the Supreme Court again denied Gilliam's petition for a writ of certiorari, Gilliam v. Maryland, 510 U.S. 1077 (1994).

Gilliam then filed a second petition for post-conviction relief in state court, alleging that execution by means of a gas chamber constituted cruel and unusual punishment in violation of the Eighth Amendment. While the trial court indicated it would deny Gilliam's petition because the claim was without merit, it deferred issuing an execution warrant until March 7, 1994, to allow him time to file a federal habeas petition. Instead of preparing a federal petition, Gilliam retained new counsel and began preparing an amended second petition for state post-conviction relief. In the meantime, the Circuit Court for Baltimore County denied Gilliam's pending petition. A few days later, Gilliam filed his second amended state petition reiterating not only the Eighth Amendment challenge but also seven new claims for relief. These new claims included the allegations that the state, at sentencing, presented psychiatric testimony violating Estelle v. Smith, 451 U.S. 454 (1981), and that the Estelle v. Smith claim was not procedurally barred because trial counsel was ineffective. The second amended petition also raised an alleged conflict of interest in that Gilliam's trial counsel was assisted by the Office of Public Defender and his appeal counsel was an employee of that office, which also employed the attorney representing his co-defendant, Kelvin Drummond. The Circuit Court for Baltimore County denied the second amended petition on procedural grounds because it was moot, and the Court of Appeals of Maryland denied leave to appeal.

Gilliam next filed a common law writ of habeas corpus in Montgomery County, Maryland, on the ground that he possessed newly discovered evidence of his actual innocence. That petition was assigned to the court in Baltimore County, which denied the petition

4

without a hearing. The Court of Appeals of Maryland again denied Gilliam leave to appeal.

Finally, Gilliam filed the petition in this case. Following various amendments to the petition, the district court issued an opinion on the merits, without finding it necessary to have an evidentiary hearing. The district court first noted that its decision would not be affected by the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, because the outcome was not affected by the retroactivity vel non of that statute.[1] The district court then held, under pre-AEDPA law, that Gilliam's counsel at the pretrial suppression hearing had not been constitutionally ineffective and that Gilliam's appellate counsel had also not been constitutionally ineffective because of an alleged conflict of interest. The district court did, however, hold that representation of Gilliam's counsel at the sentencing phase of trial fell below Sixth Amendment standards in that the attorney "failed to conduct an adequate investigation and prepare expert witnesses needed to present mitigating circumstances at sentencing." In particular the court held that Gilliam's counsel during the sentencing phase had "failed to act in his client's behalf when he consented to the prosecution's request [for a psychiatric interview] without adequate reason, without his presence at the interviews, and with the knowledge that he would not be presenting psychiatric testimony on behalf of his client at sentencing." (Emphasis in the original). The court vacated the death sentence and remanded the case to state court for resentencing. Following the state's motion to alter or amend the judgment, however, the district court reversed itself because Gilliam had failed to show

_____

[1] An amicus brief has been filed by five Maryland death row inmates arguing that Maryland's statutory scheme does not comply with the requirements of Chapter 154 of the AEDPA, specifically 28 U.S.C. § 2261. Recognizing that this issue has not been resolved on appeal, the amicus brief urges us to adopt the reasoning of the district court in Booth v. Maryland, 940 F. Supp. 849 (D. Md. 1996), vacated on other grounds, 112 F.3d 139 (4th Cir. 1997), which held that Maryland was not "entitled to invoke the benefits of Chapter 154." Because we conclude that the district court correctly denied Gilliam's petition for habeas relief under pre-AEDPA law, which is more generous to Gilliam than is the AEDPA, we do not address whether the AEDPA applies to Gilliam's petition.

that the result of the sentencing would have been different but for the ineffectiveness of counsel. The court concluded that because the sentencing court properly found no mitigating circumstances to outweigh the aggravating factors of the crime's commission during a robbery and a kidnapping, "even if additional information concerning childhood sexual abuse had been taken into account by the sentencing court as a mitigating factor, there is little likelihood that a reasonable experienced jurist nevertheless would have found such abuse sufficient to outweigh the severity and aggravating circumstances of the crime." Accordingly, the district court issued a supplemental memorandum, reinstating the death sentence.

Gilliam now appeals, contending that (1) counsel at his pretrial suppression hearing was ineffective; (2) counsel at his capital sentencing was also constitutionally deficient because they failed to produce mitigating evidence of childhood sexual abuse, drug addiction, and other similar claims; and (3) counsel on direct appeal had a conflict of interest when the state Public Defender's office represented both Gilliam and his co-defendant through separate attorneys.

II

Gilliam first argues that the district court erred in ruling on his habeas petition without granting him an evidentiary hearing. See Rule 8, Rules Governing § 2254 Cases. Under pre-AEDPA law, in order to obtain a federal habeas hearing, Gilliam is required to (1) allege specific facts which, if true, would entitle him to relief, and (2) establish one of the factors listed in Townsend v. Sain, 372 U.S. 293, 313 (1963), overruled on other grounds, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), to determine whether the petitioner received a full and fair hearing in prior proceedings. See Bennett v. Angelone, 92 F.3d 1336, 1347 & n.10 (4th Cir. 1996). The determination of whether Gilliam should have been afforded a hearing thus necessarily depends on the merits of his habeas claims. Because we rule that Gilliam's claims are without merit, it follows that the district court did not err in refusing to conduct a hearing under Rule 8. See Townsend, 372 U.S. at 313.

III

On the merits of his petition, Gilliam contends that the district court improperly denied him relief on his claim that his Sixth Amend-

6

ment right to be free from ineffective counsel was violated at the pretrial hearing on his motion to suppress his confession. He maintains that his counsel failed adequately to present factual and expert opinion testimony indicating that his confession was not voluntary. In particular, he argues that his attorney failed to interview witnesses who knew about Gilliam's head injury, to obtain additional documents regarding his injury, and to introduce evidence about the long-lasting effects of PCP.

The facts supporting this claim were resolved against Gilliam in state court. As observed by the Court of Appeals of Maryland:

> Gilliam was arrested in the early morning hours of December 5, 1988, two days after the murder, following a high-speed chase which ended when Gilliam's car collided with a median wall. The police took Gilliam to a local hospital, where he was treated and released to police custody. Prior to being interrogated, he was detained in a holding cell for over ten hours. When his interrogation began over twelve hours after his arrest, Gilliam was asked to read the Miranda warnings aloud, and did so. Gilliam also initialed and signed a Miranda rights waiver. The interrogation officers testified that Gilliam was coherent, responsive, and did not appear to be suffering from the effects of drugs.

Gilliam II, 331 Md. at 666 (footnote omitted). Notwithstanding these facts, Gilliam contends that his attorney should have brought in as witnesses the state trooper who arrested Gilliam, Gilliam's mother, and two other witnesses, who could testify regarding his impaired physical condition and drug use prior to his arrest. But, as the Court of Appeals noted, such testimony could not override the well established facts:

> [Gilliam's attorney] did consult with Dr. Ramamurthy, a specialist in internal medicine, who upon reviewing the hospital reports detailing Gilliam's medical treatment after his arrest, concluded it would be difficult to present expert testimony on mental impairment at the time of the confession. The hospital report indicated Gilliam never lost consciousness after the accident and that he was alert and understood

7

what was happening. Gilliam had advised [his attorney] before the suppression hearing that he "knew what[he] was saying," that "he was not intoxicated" when he confessed, and that he confessed after he was told Kelvin Drummond confessed because he "had the presence of mind to try and establish a defense of accidental shooting." Further, Gilliam did not give his statement to the police until over twelve hours after his arrest and after he had been left alone in a cell for approximately ten hours prior to his interrogation, thus militating against any claim of intoxication or sleep deprivation.

Gilliam II, 331 Md. at 667. These factual findings by a state court of competent jurisdiction "shall be presumed to be correct," unless Gilliam is able to offer some reason to conclude otherwise. See 28 U.S.C. §§ 2254(d) & (e) (1966). Gilliam has failed to establish any reason to disturb the state courts' factual findings and accordingly, as the state court concluded:

> Faced with the evidence of the voluntariness of Gilliam's tape recorded confession as well as with Gilliam's tacit acknowledgment of its voluntariness, [Gilliam's attorney] did as much as could reasonably be expected. Gilliam has failed to prove [the attorney] rendered ineffective assistance in his preparation for or representation during the suppression hearing.

Gilliam II, 331 Md. at 668. Of course, while the state's factual findings are presumed correct, to the extent that an ineffective assistance of counsel claim is a mixed question of law and fact, we conduct our review de novo. See, e.g., Becton v. Barnett, 920 F.2d 1190, 1192 (4th Cir. 1990).

In order to show that his Sixth Amendment rights had been abridged, Gilliam must show first that his "counsel's performance was deficient," and second that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Moreover, the alleged deficiency of representation must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. There is a strong presumption that counsel's perfor-

8

mance was not deficient, and the burden is on the defendant to demonstrate that his legal representation fell below "an objective standard of reasonableness." Id. at 688. In short, the effectiveness of counsel under the Sixth Amendment is adjudged by "(1) the competency of representation and (2) the prejudice which any alleged deficiency caused to the defense." United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991).

Gilliam argues under this standard that his attorney should have produced "some of the nation's top experts in the effects of PCP" or additional witnesses who could have testified to the seriousness of the injuries sustained by him in the pre-arrest accident. He concedes, however, that his hospital records were admitted into evidence. He must also acknowledge that his counsel consulted with an expert who concluded that "it would be difficult to present expert testimony on mental impairment at the time of the confession." Gilliam II, 331 Md. at 667. The record does show that Gilliam's counsel did explore the various possibilities and, indeed, presented evidence from Gilliam himself that the effect of drugs at the time of his confession made him "paranoid" and "uncomfortable," and that "in a way I understood [the Miranda warnings] and in a way I didn't." Id. at 366-67. In view of this record, we conclude that Gilliam has failed to establish that the level of his counsel's representation at his pretrial suppression hearing fell below the "reasonably effective assistance" test of Strickland.

IV

Gilliam contends that his counsel was also ineffective during the sentencing phase of his trial because counsel failed adequately to develop and present mitigating evidence. Gilliam asserts that his counsel failed to present factual mitigating evidence or investigate: (1) child abuse that Gilliam suffered while growing up; (2) his "impaired cognitive functioning"; (3) his substance abuse and addiction; (4) the facts underlying Gilliam's prior convictions and the abuse he suffered while imprisoned for these crimes; (5) his domination by the Drummond brothers; (6) his "substantial impairment" due to drugs at the time he murdered Christine Doerfler; and (7) his "youthful age." Gilliam also asserts that counsel (8) ineffectively prepared mental health experts retained for his defense for their anticipated mitigating testimony; and (9) failed to prevent a state psychiatrist from inter-

9

viewing Gilliam prior to capital sentencing, attend that interview, and seek exclusion of the psychiatrist's testimony.

We conclude that many of these claims and factual allegations are procedurally barred by the procedural default doctrine because they were never presented in state court. And we conclude that the claims which are not procedurally barred fail on their merits because Gilliam has failed to show prejudice. See Tatum, 943 F.2d at 375. We begin with the items procedurally barred.

The procedural default doctrine requires a state prisoner seeking federal habeas corpus relief to exhaust fully his state remedies and present each of his claims first to the appropriate state court. Under pre-AEDPA law, habeas relief is barred "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b) (1966). The purpose underlying this doctrine is to give the "state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing." Matthews v. Evatt, 105 F.3d 907, 910 (4th Cir.), cert. denied, 118 S. Ct. 102 (1997). Accordingly, federal habeas courts are authorized to consider only those issues which have been "`fairly presented' to the state courts." Id. at 911 (quoting Picard v. Connor, 404 U.S. 270, 275-78 (1971)). To present an issue to the state court fairly, the petitioner must present the state court with the "`same factual grounds and legal theories'" that he seeks to assert in his federal petition. Id. (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir.), cert. denied, 116 S. Ct. 2574 (1996)). Procedural default may be excused only if the petitioner "can demonstrate cause and prejudice for the default," Gray v. Netherland, 116 S. Ct. 2074, 2080 (1996), or that "a fundamental miscarriage of justice" would result, Harris v. Reed, 489 U.S. 255, 262 (1989); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991). Moreover, when a state court has declined to review the merits of a federal constitutional claim because it has relied on an adequate and independent state procedural rule, "we may not consider these claims on their merits unless [the petitioner] can demonstrate that cause and prejudice exist to excuse the default or that the failure of the court to consider the claims would amount to a fundamental miscarriage of justice." Mackall v. Angelone, ___ F.3d ___, No. 95-4018, slip op. at 6 (4th Cir. December 18, 1997). The burden of proving that a claim has been exhausted

10

by presenting it to the state's highest court "lies with the petitioner." Matthews, 105 F.3d at 911.

In connection with Gilliam's ineffective counsel claim during his sentencing, most of the facts and claims which he proffers were never presented to the state courts. Specifically, claim (1), based on a failure to present evidence of child abuse, relies on affidavits which were first attached to the amended federal habeas petition and were never presented to the state courts. Claim (3), based on substance abuse and addiction, claim (5), based on domination by the Drummond brothers, and claim (6), based on mental impairment due to drugs, while considered on different facts by the state courts, are also based upon affidavits never presented to the state courts. Furthermore, several claims were presented for the first time in the amended federal habeas petition. These include claim (4), that counsel failed to develop the facts underlying his prior convictions and the abuse he allegedly suffered while imprisoned for them, and claim (9), that counsel failed to prevent a state psychiatrist from interviewing him prior to sentencing. Finally, claim (7), that Gilliam's counsel failed to argue the statutory mitigating factor of youthful age, was never fairly presented to the state courts. Because Gilliam has had the opportunity for a direct appeal of his conviction to Maryland's highest court and the United States Supreme Court, as well as two prior state post-conviction proceedings, state review is no longer available for these defaulted claims, see Md. Code Ann., Art. 27 § 645A(a)(2) (1994) (limiting state habeas petition to two petitions),[2] and they are barred by the procedural default doctrine unless the petitioner can show cause and prejudice or a miscarriage of justice to excuse his default. See Matthews, 105 F.3d at 911.

Gilliam argues that he has shown cause to excuse these defaulted claims and factual allegations because his state post-conviction counsel acted under a conflict of interest. This argument has no merit, however, because it relies on the alleged ineffectiveness of his state post-conviction counsel, and there is no constitutional right to counsel in state collateral proceedings. See Pennsylvania v. Finley, 481 U.S.

_____

[2] Maryland statute now prohibits a state habeas petitioner from filing more than one petition. See Md. Code Ann., Art. 27 § 645A(a)(2)(i) (1997).

11

551, 555 (1987). Since Gilliam had no constitutional right to counsel during his state collateral attacks on his conviction, he had no right to conflict-free counsel or even effective counsel. See Mackall, slip op. at 13 (holding that habeas petitioner "has no right to effective assistance of counsel in his state habeas proceedings").

Not procedurally barred are Gilliam's claims that the mitigating factors of impaired cognitive functioning and duress were not sufficiently developed; that counsel was ineffective in its reliance upon graduate students to research Gilliam's psychosocial history; and that counsel failed to prepare Gilliam's psychological experts adequately. Accordingly, we address these claims on the merits.

Gilliam's mitigation case at sentencing consisted of the testimony of Dr. Shapiro, a psychologist who had developed Gilliam's psychological "profile" based upon a battery of tests, interviews of family members obtained by graduate students, and testimony by family members. The state expert, Dr. Siebert, testified to rebut the mitigation evidence, and based his opinions on material from several sources, including his two personal interviews of Gilliam, which Gilliam's counsel did not attend. Gilliam's counsel did consider calling another doctor as a witness, but, after consulting with co-counsel, with Gilliam, and with Gilliam's mother, the strategic decision was made not to call the second doctor. Gilliam's counsel did not present any other mitigating evidence witness to testify to his alleged mental impairment and domination by the Drummonds at the time of the murder. But Gilliam's counsel did argue to the court at some length that Gilliam acted under substantial duress because he was afraid that Tony Drummond would kill him if he did not shoot Christine Doerfler, that Gilliam was the product of a horribly dysfunctional and abusive family, that he was delusional from drugs at the time of the murder, that he suffered from a mental disorder and was substantially impaired as a result of his abusive childhood and drug abuse, that he was drug addicted, that he was of youthful age (22), that he had a low I.Q., and that he was remorseful and unlikely to commit any future crimes. Gilliam's counsel concluded by arguing that his client

> was under the influence of nartcotics [sic] and had been for
> such a long period of time prior to that, he was emotionally
> disturbed by these drugs, does have a mental disorder as a

12

result of these drugs. And the state proved a very important thing, that after this awful crime was committed, what did they do, what did all these guys do? They came back, got something to eat with their girlfriends and did what? Continued to use PCP because they are addicted to this horrible drug. That is what this case is all about, how nartcotics [sic], PCP and cocaine, can destroy a human being who in turn took the life of someone else.

But I think we have proved to you by the preponderance of the evidence, overwhelming evidence that his ability was substantially impaired as a result of a mental disorder, emotional disturbances, life-long and the drugs. I ask the Court most respectfully to impose a life sentence if that is what it has to be. I think that my client can be rehabilitated and I ask the Court most respectfully do not, do not impose the death penalty.

Finally, during sentencing, Gilliam addressed the court and apologized for his crime, asked for forgiveness, and expressed his remorse. This case covered all of the points Gilliam now raises.

In proceeding with sentencing, the trial judge found that two of the ten possible aggravating factors under Maryland law existed to warrant consideration of the death penalty: The murder had been committed during a robbery, and the murder had been committed during a kidnapping. Since it found aggravating factors, it turned to and reviewed the statutorily established mitigating circumstances:

(1) The defendant had not previously

(i) been found guilty of a crime of violence;

(ii) entered a plea of guilty or nolo contendere to a charge of a crime of violence; or

(iii) had a judgment of probation or stay of entry of judgment entered on a charge of a crime of violence.

13

(2) The victim was a participant in the defendant's conduct or consented to the act which caused the victim's death.

(3) The defendant acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.

(4) The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder or emotional disturbance.

(5) The youthful age of the defendant at the time of the crime.

(6) The act of the defendant was not the sole proximate cause of the victim's death.

(7) It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society.

(8) Any other facts which . . . the court specifically sets forth in writing that it finds as mitigating circumstances in the case.

Md. Code Ann., Art. 27, § 413(g). Maryland law provides that if the court finds any mitigating factors, it must weigh the mitigating factors against the aggravating factors:

(1) If the court or jury finds that one or more of these mitigating circumstances exist, it shall determine whether, by a preponderance of the evidence, the aggravating circumstances outweigh the mitigating circumstances.

(2) If it finds that the aggravating circumstances outweigh the mitigating circumstances, the sentence shall be death.

14

> (3) If it finds that the aggravating circumstances do not outweigh the mitigating circumstances, a sentence of death may not be imposed.

Id. § 413(h). Because the sentencing judge found no mitigating factor, he sentenced Gilliam to death.

The mitigating evidence that Gilliam argues his counsel failed to present is essentially duplicative of the evidence actually presented by his counsel at trial, which was squarely rejected as mitigating by the sentencing judge. The proffered evidence did not change the facts, nor did it provide a basis for mitigation that the trial court had not considered. We agree with the district court's finding in this case that if the additional evidence proffered by Gilliam in his habeas petition had been presented to the sentencing judge at trial, a reasonable judge would not have found that the evidence mitigated the brutality of Gilliam's cold-blooded act of murder, as Gilliam characterized the act himself in a letter to counsel. See Gilliam II , 331 Md. at 673-74.

Thus, Gilliam has failed to meet his burden under the second element of the Strickland test. He has failed to show that "but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In Plath v. Moore, 1997 WL 728664 at *6 (4th Cir.), we noted in the capital sentencing context, Strickland's prejudice element requires that the petitioner demonstrate a "reasonable probability" that the alleged error would have changed the sentence imposed. We conclude that Gilliam has not met this burden.

V

Finally, Gilliam contends that a conflict of interest undermined his counsel's ability to develop properly mitigating evidence during his state proceedings with regard to the alleged domination of petitioner by the Drummonds, correction of allegedly erroneous factual findings, meaningful post-conviction review, and evidence of the inapplicability of the death penalty to petitioner on the grounds that Gilliam was not the actual shooter. The conflict of interest Gilliam alleges was based on his claim that the Maryland Office of the Public Defender had substantial influence over Gilliam's original trial counsel while

15

simultaneously representing Gilliam's co-defendant, Kelvin Drummond. In addition, Gilliam claims that since his counsel on his direct appeal and his first post-conviction proceeding was an assistant public defender, the conflict of interest persisted during these proceedings.

As the district court observed, Gilliam was represented at trial, including sentencing, by his own privately-retained counsel. Kelvin Drummond, who testified at trial that petitioner had shot Christine Doerfler, was represented by an Assistant Public Defender. On direct appeal of his conviction, Gilliam was represented by attorneys from the Public Defender's appellate division, and attorneys from the Public Defender's office prepared and filed Gilliam's first state post-conviction petition. But private attorneys were retained thereafter. These private attorneys amended Gilliam's second post-conviction petition and represented him at the hearing.

The district court held that Gilliam's conflict claim is procedurally barred, and we agree. This claim was not presented to the Maryland courts until the second amended petition for post-conviction relief, a petition which was dismissed as moot. As we have already noted above, a state procedural bar prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. See Mackall, slip op. at 6. Gilliam has not demonstrated either.

Moreover, while we need not reach the merits of this claim, we note that Gilliam has pointed to no prejudice if, indeed, a conflict existed. See Beaver v. Thompson, 93 F.3d 1186, 1192 (4th Cir. 1996), cert. denied, 117 U.S. 553 (1997); see also Burger v. Kemp, 483 U.S. 776, 785 (1987).

Accordingly, we affirm the judgment of the district court denying Gilliam's petition for the writ of habeas corpus.

AFFIRMED

16