LUTTIG, Circuit Judge,
concurring:
The full en banc court ignores the dissent’s caricatures of both the question of law presented and the facts giving rise to that question, and properly decides the issue before us on the basis of the governing legal standards and the actual facts as they appear in the record. I concur in the judgment reached by the court and in its opinion.
Although the need should not have presented itself, suffice it to say that this is not a case even remotely about “the hallmarks of totalitarian governments,” post at 249 (Wilkinson, J., dissenting). It does not concern “the most terrifying regimes of the Twentieth Century” or anything approaching such. Id. And it is not a case that bears mention alongside “the most terrible examples of human expendability.” Id. Even to suggest these comparisons trivializes the historical events and the victims of those events to which the dissent invokes reference.
This case does not invite us to “set foot on a road Americans will not recognize and our Constitution will not tolerate,” id. And by denying Humphries’ petition on the grounds that the majority correctly does is not in any sense whatsoever to “sanction executions on the basis of extended weighings of relative human worth,” id. at 239, or to “condonfe] egregious human worth comparisons,” id. at 239, of the most “horrific sort,” id. at 238. Such hyperbole only betrays the fact that the dissent has chosen (as did the panel, mistakenly as well) to address itself to a question of law and to a set of facts that are not even arguably before the court.
To decide this case, we do not need to plumb the “anciently established principles” of federal law, see id. at 235, nor must we “ascend to- this register” of “sentencing philosophy” and its “seminal concepts” at “a high level of generality,” see id. at 243-44. And neither aré we invited or required to conduct a far-reaching “survey! of] American sentencing practice” and “historic sentencing procedure,” id. at 245, 248: Tellingly, not even the dissent under *228 takes in actual analysis anything of the sort.
We have before us, instead, a rather straightforward question of law, one as to which our scope of review, as a court of law, is clearly and narrowly circumscribed by congressional enactment and binding Supreme Court precedent. Contrary to the dissent’s characterization, we do not even have before us, as we would on direct appeal of a case in which an explicit human worth comparison were made, the question of whether it would violate the Constitution for the government to resort to such comparisons in appealing for a higher sentence of one convicted of crime. Before us is nothing less, but nothing more either, than an ineffective assistance of counsel claim under Strickland v. Washington, raised on collateral review of a state court judgment that fully considered that claim. As such, the precise question of law with which we are confronted is whether, within the meaning of 28 U.S.C. § 2254, it was contrary to or an unreasonable application of clearly established holdings of the Supreme Court of the United States for the South Carolina state court to conclude that Humphries’ counsel at sentencing were not constitutionally ineffective under Strickland for failing to object to the portion of the state solicitor’s argument that allegedly violated Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
The dissent is at pains to avoid even as much as the articulation of this narrow legal question because its precise articulation draws into stark focus not only the dissent’s exaggeration of the question presented, but, ultimately, the indefensibility of the dissent under the legal standards that govern disposition of this case.
Because of the particular posture of this case, we are required to accord extraordinary deference to trial counsel’s failure to object. First, as the dissent concedes, Strickland requires the state court and this court to treat with great deference trial counsel’s real-time decisions with respect to objections at trial. Second, as the dissent also concedes, section 2254(d) requires us to defer to the state court’s application of Strickland. Thus, the great deference owed to trial counsel’s contemporaneous decisions implicating trial strategy is compounded on collateral review, where we are to defer to the state court’s highly deferential review of these decisions. Furthermore, under AEDPA, we are bound to uphold the judgment of the state court unless it was unreasonable in its application of both Strickland and Payne, not just the one or the other. And on top of all this, the chief case upon which the dissent relies, namely Payne, does not even address the issue presented in this case — namely victim-to-defendant value comparisons — thus making it utterly implausible to suggest that the South Carolina court’s treatment of that case constituted an unreasonable application of any clearly established holding in Payne.
In short, we are reviewing with substantial deference the state court’s application of the clearly established holdings of two cases, Strickland and Payne. Even if, under such deference, we were to conclude that the state court erred in its understanding of the holding and/or application of Payne, in order to grant Humphries’ petition we would still have to conclude that, under the same deference, the state court erred in its application of Strickland— which itself requires the state court to defer to trial counsel. Therefore, we face the following four, separate, plainly valid, alternative grounds compelling affir-mance of the denial of Humphries’ petition: (1) it was not contrary to or an unreasonable application of Payne for South Carolina to hold that Payne erects *229 no per se bar against victim-to-defendant value comparisons, because Payne does not address that issue at all; (2) even if Payne did address such comparisons, it was not an unreasonable application of Payne for South Carolina to conclude that no such human-worth comparison occurred in this case; (3) even if such were an unreasonable application of Payne, it would not be an unreasonable application of Strickland for South Carolina to.conclude that counsel’s failure to object did not constitute objectively unreasonable performance; and (4) even if failure to object were an unreasonable application of Strickland, it was nevertheless not an unreasonable application of Strickland for South Carolina to conclude that Hum-phries was not prejudiced by counsel’s failure to object. Each of these four grounds is individually compelling and each is individually sufficient to compel affirmance in this case. Because, as a consequence of its exaggeration, the dissent fails to effectively address any of these four grounds, much less all of them, its errors are compounded across multiple layers of .the required legal analysis.
A.
As Humphries concedes, in order to prevail on his Strickland claim premised on counsel’s failure to object, he must first establish that what, occurred at trial without objection was improper, illegal, or unconstitutional. . See Appellant’s Br. at 12-13.- Humphries argues and the dissent urges that the four brief references to Humphries during the solicitor’s narrative of Dickie Smith’s life created an objectionable person-to-person value comparison in violation of Payne. On post-conviction review, the South Carolina Supreme Court held, inter alia, that victim-to-defendant value comparisons were not clearly unconstitutional because “Payne does not indicate any concern about comparisons between the victim and the defendant.” Humphries v. State, 351 S.C. 362, 570 S.E.2d 160, 167 (2002) (“Humphries II”). Our task in this habeas proceeding is to determine whether this state-court ruling was “contrary to,'or involved an unreasonable application of’ the holding (rather than the dicta) of Payne. 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (holding that the phrase “clearly established federal law in section 2254(d)(1) refers to ‘the holdings, as opposed to the dicta,- of [the Supreme] Court’s decisions as of the time of the relevant state-court decision’ ”).
Plainly it was' not, because Payne* never once even mentions victim-to-defendant value comparisons. Humphries’ claim thus falters at its very first step. On our strictly circumscribed- review of Humphries’ state-court conviction, this elementary observation is sufficient to dispose of the petition, because, as a threshold matter, Humphries was required to show in state court that the challenged portion of the argument was unconstitutional.*
*230 Nevertheless, the dissent raises three flatly untenable arguments that Payne somehow clearly established “the ban on such comparisons” as its holding— without even mentioning such comparisons. Post at 235. First, the dissent argues that, because Payne does not explicitly condone human-worth comparisons, it thereby condemns them. See post at 242 (“Notably absent from the Court’s discussion is any hint of imprimatur for human worth comparisons .... Indeed, one searches the Payne opinion in vain for any indication that the Court meant to condone such comparative judgments.”). But, of course, under law we do not ascertain the holding of a ease by inquiring into what is absent from the Court’s discussion. Rather, the holding of a case is found in what is actually present in the Court's discussion. The dissent’s “negative inference” approach to Supreme Court precedent would find reversible error in every trial argument of the slightest novelty as-yet unaddressed by the Court — turning AEDPA on its head.
Second, the dissent references the following passage as its sole evidence from the text of Payne that Payne “eon-demn[ed]” human-worth comparisons:
Payne echoes the concern voiced in Booth’s, case that the admission of victim impact evidence permits a jury to find that defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy. As a general matter, however, victim impact evidence is not offered to encourage comparative judgments of this kind — for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show instead each victim’s uniqueness as an individual human being....
Payne, 501 U.S. at 823, 111 S.Ct. 2597 (emphasis in original) (citation and quotation marks omitted). As an initial matter, the dissent’s treatment of this text from Payne is disingenuous, in a way that exactly mirrors the error of the vacated panel opinion. Compare post at 242 with Humphries v. Ozmint, 366 F.3d 266, 272 (4th Cir.2004). In particular, both the dissent and the panel opinion introduce the “concern” about victim-to-victim value comparisons as if it were the Court’s concern, instead of a concern raised by the litigant. Then, both proceed to quote the sentence beginning “[a]s a general matter” out of context, omitting the key word “however” that denotes contrast between the concern raised by the litigant and the Court’s subsequent remark — thereby twisting the Court’s language to imply that the Court was expressing explicit disapproval of such value comparisons in this passage. See post at 242 (arguing that the Court “professes incredulity” about victim-to-victim value comparisons in this passage, and that it thus “signals a clear disapproval for the kind of interpersonal comparison that occurred here”). Of course, as is plain from the text quoted fully above, the passage says something quite different than the dissent’s tortured quotation would suggest. In this key passage, the Court simply (1) noted that the litigant Payne had raised a concern about value comparisons, and then (2) made a normatively neutral observation that, in contrast to this concern, victim impact evidence is not generally admitted for such purposes. Therefore, this key passage — the only passage from Payne upon which the dissent can *231 possibly rely — does not “condemn” or otherwise express disapproval of any human-value comparisons at all; and, needless to say, neither did the Court, through this passage, “profess incredulity” at such comparisons. Instead, it simply makes the neutral observation that the general purpose of victim-impact evidence is not to create victim-to-victim comparisons.
Moreover, even if this passage from Payne did express disapproval of value comparisons, it would nevertheless be inadequate for the dissent’s purposes for three further reasons. First, as the South Carolina court held, the passage addresses only victim-to-victim value comparisons, not victim-to-defendant value comparisons, and therefore does not establish a bar against (or otherwise comment upon) the latter. See Humphries II, 570 S.E.2d at 167 (“According to this passage, the comparison prohibited by Payne is one between the victim and other members of society; Payne does not indicate any concern about comparisons between the victim and the defendant.”). Second, because there was apparently no allegation in Payne that any victim-to-victim value comparison had been made, the passage is clearly in dicta, not in holding, and thus irrelevant under AEDPA. See Williams, 529 U.S. at 412, 120 S.Ct. 1495; United States v. Washington, No. 03-4867, Slip op. at (4th Cir.2005) (“[T]he holding ... is limited to sets of facts that are materially indistinguishable from the facts before the court in that case.” (emphasis in original)). Third, in addition to all this, we are reviewing the South Carolina court’s interpretation of this passage under the deferential “unreasonable application” standard of section 2254(d)(1). See Williams v. Taylor, 529 U.S. at 411, 120 S.Ct. 1495 (“[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.”); see also Booth-El v. Nuth, 288 F.3d 571, 575-76 (4th Cir.2002) (Wilkinson, C.J.) (“The Court has stressed that, in section 2254(d)(1), Congress specifically used the word ‘unreasonable,’ and not a term like ‘erroneous’ or ‘incorrect.’ ” (alteration and quotation marks omitted)). Patently, under this standard and in light of this evidence, it was not unreasonable for South Carolina to conclude that Payne erected no per se bar to victim-to-defendant value comparisons.
Finally, in a virtual concession that the language of Payne provides no basis for its argument, the dissent grasps at lofty abstractions in an attempt to salvage its position. Turning from its self-described “textual dissection” of Payne, which actually includes virtually no reference to the text of Payne, the dissent appeals to “an overview of Payne and its sentencing philosophy,” admittedly “ascending to th[e] register” of “a high level of generality.” Post at 243. That the dissent must reference such ethereal concepts as the “overview” and “sentencing philosophy” of Payne to support its argument effectively demonstrates, not only that Payne did not clearly establish in holding a rule against human-worth comparisons, but also, and even more certainly, that it was not unreasonable under section 2254(d)(1) for South Carolina to so conclude.
Because South Carolina was not even arguably unreasonable in determining that Payne did not establish a per se rule against victim-to-defendant value comparisons, Humphries’ Strickland claim fails on this ground alone.
But Humphries’ claim fails on three other compelling grounds as well.
*232 B.
Even if Payne had clearly established, in holding, a per se rule against victim-to-defendant value comparisons (which it plainly did not), South Carolina’s determination that no such human-worth comparison occurred here would not be an “unreasonable application” of Payne. See Humphries II, 570 S.E.2d at 166 (“We agree with the PCR court’s finding that the solicitor’s argument does not suggest that Smith’s life is worth more than the Petitioner’s life.” (emphasis in original)).
The challenged portion of the solicitor’s argument consists primarily of the following three sentences, interspersed in the solicitor’s summation of Dickie Smith’s life history: “That’s the same year Shawn Paul Humphries committed two house break-ins at age 13.... That’s the same year Shawn Paul Humphries is up for his second probation violation and sent down to Columbia.... That’s the same year Shawn Paul Humphries went to jail for two years.” J.A. 107. The solicitor thus juxtaposed positive and happy events in the victim’s life — his marriage, his decision to start a homebuilding business, and the birth of his daughter— with contemporaneous misdeeds in Humphries’ life. J.A. 107.
The dissent contends that the only possible purpose and effect of such a juxtaposition was to convey the conclusion that Humphries’ life was worth less than Dickie Smith’s life. See post at 237-38 (“The solicitor’s comparisons simply leave no room for explanations of inadvertence, or of an unintentional verbalization of an errant train of thought.... Rather, the prosecution sought point-by-point, side-by-side, and year-by-year to demonstrate to the jury that at the very instant one life was being put to worthwhile use, the other was not.”). But of course it does not follow that, because the references to Humphries were not inadvertent, they must have deliberately created, a human-worth comparison. On the contrary, the apparent purpose and effect of the solicitor’s references to Humphries was to deflate the exculpatory version of Humphries’ life history presented by the defense— which was the prosecution’s main task at the sentencing hearing, a task openly endorsed by Payne.
By far, the bulk of the sentencing hearing and the bulk of the solicitor’s closing argument were concerned with the defense’s attempt to present an exculpatory story about Humphries’ culpability for the murder by portraying the hardships of Humphries’ past life. The defense attempted to show that Humphries’ moral guilt for the murder was attenuated due to the misfortunes of his past: poverty, parental abuse, drugs and alcohol, and juvenile crimes and punishment. To this end, the defense presented thirteen witnesses in mitigation — as compared to the two victim-impact witnesses that the prosecution offered. In his closing argument, the solicitor’s discussion of this issue of Hum-phries’ culpability spans twelve full pages of the transcript — as compared to the three and a half pages devoted to the narrative of Dickie Smith’s life. Compare J.A. 92-104 with J.A. 105-08. The dominant theme of the solicitor’s argument was that, despite the hardships he faced in his childhood and youth, Humphries still bore moral responsibility for his choices. The following excerpt summarizes his twelve-page discussion of Humphries’ personal culpability:
A lot of people come from broken homes. A lot of people come from single parent homes. Dickie Smith came from a single parent home. Ashley Smith is now from a single parent home. If everybody who came from a single parent home or a blended family or a *233 home with violence, if every person went out and murdered, we couldn’t fill this jury box with people.
There’s no question [Humphries’] daddy was violent. There’s no question violence is a learned behavior....
And that’s a problem in America. There’s no question about it, but violence as a learned behavior does not come close to explaining what happened here. It just doesn’t do it.
... Violence as a learned behavior does not explain larceny. Violence as a learned behavior does not explain evil malice killing. Simply doesn’t do it.
... That’s the mitigation that they’re throwing at you. That’s the crux of the defense.
Why is it the crux of the defense? Because you’ve got an aggravated, senseless killing. No question about it. And you’ve got a kid who’s been in trouble since he was 13, horrible record.
So the only thing that is left is to try to take this alcohol use and marijuana use, and poverty background and sort of bootstrap yourself up into some sort of mental mitigation. And I would submit to you that it fails horribly.
J.A. 100-01, 103. Like the reference to Dickie Smith in the above passage, the challenged references to Humphries in the solicitor’s brief narrative of Dickie Smith’s life underlined the main theme of the solicitor’s whole argument, namely that Hum-phries should bear moral responsibility for the choices he made. Both references, by contrasting the two men, suggest that Humphries could have made other choices that he did not make. Like Dickie Smith, Humphries could have chosen to build houses in spite of the adversity he faced; instead, he chose to break into houses. Compare post at 249 (“That Dickie Smith happened to be building houses while Shawn Paul Humphries happened to be breaking into houses is a judgment freighted with comparative moral import.”). Because Humphries could have made better choices, including the choice not to kill Dickie Smith, he should be held morally accountable for his actions, despite the defense’s attempt to argue that the difficulties of Humphries’ life exculpated Humphries for the murder of Dickie Smith. Such was the tenor of the solicitor’s argument, and the clearest import of the contrasting references to events in Humphries’ and Dickie Smith’s lives. To say that Humphries and Dickie Smith are both morally responsible for their choices is not to say that Smith’s life was “worth more” than Humphries or that Smith was a “more valuable person” than Humphries.
Clearly, the solicitor’s argument about Humphries’ moral accountability, and his use of victim-impact evidence to highlight it, were unobjectionable under Payne. The Payne Court openly countenanced the juxtaposition of victim-impact evidence with the defense’s evidence in mitigation for the purpose of deflating the exculpatory life story presented at sentencing by many capital defendants:
[T]he state has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.
Payne, 501 U.S. at 825, 111 S.Ct. 2597 (alteration in original) (quotation marks and citation omitted). Here, the solicitor used victim-impact evidence to “counteract the mitigating evidence” presented by the defendant by suggesting that the unfortunate circumstances of Humphries’ background did not absolve him of moral responsibility for his crimes. Thus, on the most natural reading of the solicitor’s ar *234 gument, the challenged portion did not constitute a human-worth comparison at all. Rather, it was a statement by contrast of the defendant’s moral accountability for his actions. Therefore, it was not an unreasonable application of Payne for South Carolina to determine that, even if Payne did bar victim-to-defendant value comparisons, no such value comparison occurred in this case.
C.
Third, even if South Carolina had erred in its treatment or application of Payne, we could not hold that it would be unreasonable for South Carolina to determine that trial counsel’s failure to object nevertheless constituted constitutionally acceptable performance under Strickland. As noted above, here we owe compounded deference to trial counsel’s decision: we defer to the South Carolina court’s highly deferential review of trial counsel’s performance. And the deference that trial counsel must be afforded under Strickland is appropriately extensive, because appellate courts are poorly suited to second-guess trial strategy and on-the-fly decisions of trial counsel. See Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“[A] court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.”). Indeed, it is well established that failure to object to inadmissible or objectionable material for tactical reasons can constitute objectively reasonable trial strategy under Strickland. See, e.g., Booth-El v. Nuth, 288 F.3d 571, 584 (4th Cir.2002) (Wilkinson, C.J.) (counsel’s failure to object to objectionable jury panel that may have been favorable for other reasons was not objectively unreasonable) (“Defense counsel made a tactical decision to preserve the jury that had already been selected.”); Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 562 (4th Cir.1999) (opinion joined by Wilkinson, C.J.) (counsel’s failure to object at trial to the testimony of an eyewitness was not objectively unreasonable because counsel may have preferred cross-examination to exclusion of the witness); Arnold v. Evatt, 113 F.3d 1352 (4th Cir.1997) (failure to object at trial to evidence discrediting a witness’ testimony could reasonably have been part of a trial strategy).
In this case, even if Payne clearly established a rule against victim-to-defendant human-worth comparisons and even if the solicitor had clearly made such a comparison, it would not constitute an unreasonable application of Strickland for South Carolina to conclude that Humphries’ counsel were not constitutionally ineffective for failing to object. After all, the allegedly objectionable portion of the solicitor’s argument was quite brief. An objectively adequate defense attorney might easily have judged that he would lose face with the jury by posing an objection that caviled at an emotionally charged point in the argument, and that this harm might outweigh any benefit to his client from having a few sentences stricken from the record. Indeed, given that there was no clearly established law on which to rely, trial counsel may have reasonably feared that the jury would view his very probably unsuccessful and unjustified objection at that point as mere pettifogging — and discounted his credibility accordingly. Also, given the brief, indirect nature of the alleged comparison, an objectively reasonable attorney might even have feared that his objection would actually draw the jurors’ minds into a human-worth comparison, rather than the solicitor’s fleeting references to Humphries. After all, absent *235 objection, the jury might well have missed the alleged significance of these references as a supposed human-worth comparison, as did the South Carolina court and the majority of judges in this circuit, all of whom are unwilling to hold that an explicit human-worth comparison occurred in this case. Likewise, a reasonable attorney might have judged that an objection at that point might have highlighted the solicitor’s effective debunking of the exculpatory version of Humphries’ life history presented by the defense.
In sum, given the deference owed to real-time, tactically significant decisions about objections made by trial counsel, it is unlikely that we could hold that trial counsel’s failure to object was objectively unreasonable under Strickland — even if we were considering this Strickland claim in the first instance and even if Payne had clearly established a rule against human-worth comparisons. Considering the fact that counsel had no explicit grounds for objection under Payne because Payne does not address such comparisons, and the fact that the deference we owe trial counsel is compounded by the deference we owe South Carolina’s judgment under AEDPA, it is evident that Humphries’ petition must be denied on the first prong of Strickland.
D.
Fourth, it was not an unreasonable application of Strickland for South Carolina to hold that Humphries did not suffer prejudice from the challenged portion of the solicitor’s argument. See Humphries II, 570 S.E.2d at 168 (“In our opinion, the solicitor’s closing argument ... did not prejudice Petitioner.”). The challenged references were brief and referred to evidence that had been admitted into the record, submitted to the jury, and extensively commented upon earlier in the solicitor’s argument. See ante at 220-22. Humphries bases his challenge primarily on three sentences in a twenty-eight page closing argument. All three referred fleetingly to evidence that he had discussed extensively only a few minutes before. As the majority concludes, there was no reasonable probability that the solicitor’s use of those few sentences at that point changed the outcome of the proceedings. See ante at 222 (“[W]e harbor no doubt that, notwithstanding the solicitor’s comparison that Humphries finds so objectionable, a sentence of death would have resulted.”). Far less did it constitute an unreasonable application of Strickland for South Carolina thus to conclude.
The denial of Humphries’ Strickland claim, thus, is independently supported by four distinct, compelling, and individually sufficient grounds for affirmance. It is for this reason that I concur in the judgment and opinion of the court.

 Payne does explicitly state (though not in holding) that "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for .relief.” Payne, 501 U.S. at 825, 111 S.Ct. 2597 (citing Darden v. Wainwright, 477 U.S. 168, 179-83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). Given that Payne erects no per se bar against value comparisons, and given that the solicitor’s use of victim-impact evidence in this case was apparently otherwise unobjectionable, it was clearly not contrary to or an unreasonable application of Darden for South Carolina to conclude that Humphries’ trial was not rendered fundamentally unfair by the brief challenged portion of the solicitor's. argument. See Humphries II, 570 S.E.2d at 167-68. Thus, for the reasons discussed thor *230 oughly by the majority, Darden likewise fails to provide Humphries with any avenue of relief.